David **GRUNBERG and Alan Singer d/b/a Red Lantern Book Store; Marty's of Bristol, Inc. d/b/a Aircraft Books and News**

v.

**TOWN OF EAST HARTFORD, CONNECTICUT and Howell Grover, Individually and as Chief of Police for the Town of East Hartford, Connecticut.**

**Civ. No. H–89–568(EBB).**

United States District Court, D. Connecticut.

Sept. 26, 1989.

Daniel A. Silver, Pudlin, Silver, Webb, Sweeney, Clebowicz & Griffen, New Britain, Conn., for plaintiffs.

José R. Ramirez, Asst. Corp. Counsel, East Hartford, Conn., for defendants.

## RULING ON MOTION FOR PERMANENT INJUNCTION

ELLEN B. BURNS, Chief Judge.

*Background*

Plaintiffs, Alan Singer and David Grunberg, are co-owners of the Red Lantern Book Store ("Red Lantern"). Plaintiff Marty's Adult World of Bristol, Inc. owns and operates Aircraft Books and News ("Aircraft Books"). Both are adult book stores located in East Hartford, Connecticut. Red Lantern and Aircraft Books sell sexually explicit books, magazines and video tapes to the public. The stores also maintain coin-operated viewing booths in which segments of the video tapes sold by the plaintiffs may be previewed by prospective purchasers.

On August 31, 1989, the plaintiffs initiated this lawsuit seeking declaratory and injunctive relief against the Town of East Hartford ("East Hartford" or "the Town"). Plaintiffs' challenge on First Amendment grounds the constitutionality of an East Hartford ordinance entitled "Regulation of Adult–Oriented Establishments" ("the Ordinance") enacted on June 6, 1989. The ordinance, which prohibits any video booths

operated by "adult-oriented establishments" to be closed or obscured from view from common areas within the stores, takes aim at decreasing the opportunity for customers to engage in sexual activity within the booths. A status conference was held between the parties on September 6, 1989. Because the ordinance was not scheduled to take effect until October 1, 1989, requests for preliminary injunctive relief were considered premature. By agreement of the parties, the pleadings were closed, and a final hearing for permanent injunction was scheduled and held on September 22, 1989.

For the reasons discussed below, this Court finds that the "open-booth" provisions of the East Hartford ordinance do not violate plaintiff's First Amendment rights. Consequently, the request for injunctive relief is denied, and the ordinance may take effect as scheduled.

*Facts*

The Red Lantern and Aircraft Books have been in business in East Hartford for approximately 12 years. These stores are in the business of selling sexually explicit and erotic magazines and books. Sexually explicit films are also available for sale or rental use. These films may be viewed by patrons in coin-operated booths maintained by the stores. Aircraft Books maintains 29 video booths which are approximately 3.5 feet wide, 4.0 feet deep and 8.0 feet high. The Red Lantern operates 13 booths which are slightly larger in dimension. In order to view a film, a customer must enter the booth and close the door behind him. Inside the booth is a menu of films from which he may select. Upon making his selection, the customer deposits a quarter into a television monitor, which entitles him to view approximately one minute of the chosen film. More time may be purchased by depositing additional quarters. The Red Lantern and Aircraft Books are the only adult book stores in East Hartford that exhibit sexually explicit films in this manner.

Store policy in both the Red Lantern and Aircraft Books prohibits the viewing of a film by more than one person per booth at any one time. Clerks on duty in both stores are instructed that this policy is to be strictly enforced. All of the booths in the Red Lantern are located on the first floor of the store. As such, store clerks are able to monitor visually use of the video booths. If a clerk sees two customers entering a single booth, or if it is apparent that a booth is occupied by more than one person,[1] the clerk will ask both parties to leave the store. A similar policy is enforced at Aircraft Books. The latter store occupies two stories, however, and all of the video booths are located on the second floor. In addition to personal monitoring of the booths, a closed-circuit television, located beneath the cash register at the front of the store enables Aircraft Book clerks to observe activity outside of the booths. The camera does not provide the clerks with an interior view of the booths. One Aircraft Book clerk is always supposed to be stationed at the front register.

Despite the one-person per booth policy, East Hartford officials became concerned about possible threats to public safety resulting from illicit sexual activity believed to be occurring in the video booths operated by the Red Lantern and Aircraft Books. In 1987, the Town began considering ways in which use of the viewing booths could be further regulated. Although the record is sparse, it appears that a special subcommittee of the East Hartford Town Council, assisted by the Corporation Council, was established to investigate the deleterious health effects in East Hartford and other communities resulting from improper use of adult video booths, and to draft legislation for the full Council to review. The record is also unclear regarding the thoroughness with which the nature of the activities and health conditions at the Red Lantern or Aircraft Books were evaluated. The parties stipulated that, as a result of investigations by the East Hartford Police

---

**1.** There is a six-inch space at the bottom of each door through which the clerks are able to identify the number of occupants inside a booth.

Department, Health Department and Building Department, the Town found there to be no adverse effects to health and safety from the operation of the plaintiffs' businesses prior to the passage of the Ordinance.[2]

Instead, East Hartford officials relied on the experiences of other communities in justifying the enactment of the Ordinance. Minutes of Town Council meetings during this period indicate that similar ordinances enacted in Newport News, Virginia, Dallas, Texas, Marion County, Indiana and Chattanooga, Tennessee were thoroughly discussed.[3] Acting upon the belief that they need not wait until the types of bookstore-related problems experienced by these cities occurred in their own community, East Hartford enacted the ordinance which is now the subject of this dispute.

The purpose of the East Hartford ordinance is to protect the general welfare, health and safety of the citizens of East Hartford, as well as the patrons of "adult-oriented establishments."[4] Citing statistics and studies performed in the above-named cities, East Hartford found that:

> (a) large numbers of persons, primarily male, frequent such "adult oriented establishments," especially those which provide closed booths .. for the private viewing of so-called "adult" motion pictures ..,
>
> (b) such closed booths .. have been used by patrons .. for the purpose of engaging in certain sexual acts;
>
> (c) male and female prostitutes have been known to frequent such establishments in order to provide sex for hire to the patrons .. of such establishments with in such booths ..,
>
> (d) doors [or] curtains .. in .. the entrances .. of such booths .. encourage patrons using such booths .. to engage in sexual acts therein .. thereby promoting and encouraging prostitution and the commission of sexual acts which cause blood, semen and urine to be deposited on the floors and/or walls of such booths .. which deposits could prove detrimental to the health and safety of other persons who may come into contact with such deposits; and
>
> (e) the reasonable regulation and supervision of such "adult oriented establishments" tends to discourage such sexual acts and prostitution ..

§ 8–60.

The central feature of the ordinance, and the only provision challenged by the plaintiffs,[5] is § 8–62(b), which states in relevant part that:

> picture theaters," and further means any premises to which the public, patrons or members are invited or admitted and which are so physically arranged as to provide booths, cubicles, rooms, studios, compartments or stalls separate from the common areas of the premises for the purpose of viewing adult-oriented motion pictures, or wherein an entertainer provides adult entertainment to a member of the public, a patron or a member, when such adult entertainment is held, conducted, operated or maintained for a profit, direct or indirect. An "adult-oriented establishment" further includes, without limitation, any "adult entertainment studio" or any premises that are physically arranged and used as such, whether advertised or represented as an adult entertainment studio, rap studio, exotic dance studio, encounter studio, sensitivity studio, modeling studio, or any other term of like import.

---

**2.** The records from which these facts were derived indicate that between December, 1987 and February, 1989, East Hartford police made no arrests of Red Lantern or Aircraft Book patrons despite weekly spot checks of both locations. Other than a single incident in January, 1989 in which an attempted "pick-up" between two men was observed, there were no reported violations. Moreover, investigations by the Department of Public Health in December, 1987 and March, 1988 found conditions in both bookstores to be satisfactory.

**3.** Although the content of the discussions pertaining to these other cities cannot be fully ascertained from the minutes of Town Council meetings, the court is convinced that the regularity with which these cases are mentioned is sufficient to demonstrate the likelihood that the Council possessed more than a passing familiarity with the experiences of these cities.

**4.** Adult-oriented establishment are defined in § 8–60(a) of the ordinance, which states:

"Adult-oriented establishment," shall include, without limitation, "adult bookstores," "adult motion picture theaters," "adult mini-motion

**5.** In their complaint and supporting memorandum of law, the plaintiffs originally challenged three provisions of the East Hartford ordinance. However, § 8–62(d), which would have prohib-

Every adult-oriented establishment doing business in the Town on and after October 1, 1989 shall be well lighted at all times and be physically arranged in such a manner that the entire interior portion of the booths, cubicles, rooms or stalls, wherein adult entertainment is provided, shall be clearly visible from the common areas of the premises. Visibility into such booths, cubicles, rooms or stalls shall not be blocked or obscured by doors, curtains, partitions, drapes, or any other obstruction whatsoever.

*Discussion*

■ The plaintiffs claim that the East Hartford ordinance violates their constitutional rights under the First Amendment in that it improperly regulates protected speech based upon its content, that the "open-booth" requirement does not promote a substantial governmental interest, that the enactment of the ordinance was related to the suppression of free speech, and that the ordinance is not narrowly tailored to achieve its stated purpose. Finally, the plaintiffs claim that, even if there are no less restrictive means of regulating the viewing of adult films, it is improper for the city to regulate existing businesses, and that only prospective legislation aimed at new business seeking to locate in East Hartford is permitted.[6]

As previously noted, the plaintiffs originally sought preliminary injunctive relief. By agreement of the parties, the pleadings in this case were closed, and a hearing was held regarding *permanent* relief. The task now before us is to determine whether the permanent relief requested is appropriate. "In deciding whether a permanent injunction should be issued, a court must first determine if the plaintiff has actually succeeded on the merits. If so, the court must decide whether the balance of the equities favors injunctive relief, and if so, what form it should take." *Smithkline Beckman Corporation v. Proctor & Gamble Company*, 591 F.Supp. 1229, 1235 (N.D. N.Y.1984) "The equitable principles to be considered with regard to granting either permanent or preliminary injunctive relief are the same, and the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *El Greco Leather Products Co. v. Shoe World, Inc.*, 599 F.Supp. 1380, 1390 (E.D.N.Y.1984) (citations omitted).

■ The plaintiffs' first claim is that the East Hartford ordinance impermissibly regulates the showing of adult films on the basis of their content. The court disagrees. Although the dissemination of material that is erotic is entitled to protection under the First Amendment, *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1168 (4th Cir.1986), "[a] city may regulate the effects of sexually oriented business without engaging in content-based regulation." *Dumas v. City of Dallas*, 837 F.2d 1298, 1302 (5th Cir.1988). Nor is a city prevented by the First Amendment "from classifying and regulating adult oriented establishments differently from other places of entertainment." *Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486, 490 (E.D.Tenn.1986).

In the present case, it is clear that the ordinance is "justified without reference to the content of the regulated speech." *City of Renton v. Playtime Theatres*, 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29

---

ited any pre-payment for the viewing of movies, was not included in the final ordinance adopted by the city, and therefore plaintiffs' objections to this section are moot. The plaintiffs have also withdrawn their objections to § 8–62(c) which requires improvements in overhead lighting in adult oriented bookstores. Plaintiff's only remaining challenge is to the "open-booth" requirements found in § 8–62(b).

**6.** In their brief, the plaintiffs also asserted that the ordinance created an unconstitutional prior restraint of speech. The plaintiffs did not offer any proof to substantiate this claim, and it need not detain us. The East Hartford Ordinance does not ban the viewing of any forms of entertainment. Nor is there is any requirement that the plaintiffs obtain a license or permit prior to their being allowed to sell, rent, or offer viewing of any films, books or magazines. Consequently, this ordinance is "manifestly not a prior restraint." *Berg v. Health and Hospital Corporation of Marion County, Indiana,* 865 F.2d 797 (7th Cir.1989).

(1986). The ordinance does not attempt to prevent the showing of adult films in the city of East Hartford. It is not aimed at the content of the films exhibited by the plaintiffs, but rather at the secondary effects of the book stores on the surrounding community. *Id.* at 47, 106 S.Ct. at 928–29. The effect of the ordinance is only to regulate noncommunicative aspects relating to the environment in which such films may be exhibited and viewed. *Doe v. City of Minneapolis,* 693 F.Supp. 774, 780 (D.Minn.1988). Any burdens on protected First Amendment rights are purely incidental. *Wall Distributors,* 782 F.2d at 1168.

■ This does not end the inquiry, however, for the question still remains whether the ordinance is sufficiently intrusive on the basic right such that it runs afoul of the First Amendment. *Id.* at 1169. Every federal court that has considered challenges to similar "open-booth" ordinances has concluded that the "proper constitutional measure .. is whether the ordinance constitutes a valid time, place and manner restriction." *Berg v. Health and Hospital Corporation of Marion County, Indiana,* 865 F.2d 797 (7th Cir.1989). *Accord Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243 (9th Cir.1982). The court concurs that the East Hartford Ordinance is properly analyzed under a time, place and manner test. Under such an analysis, an ordinance is valid:

■ if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on ... First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968).

Plaintiffs do not dispute, nor could they, that it is within the police power of East Hartford to enact this ordinance.[7] The plaintiffs claim, however, that the second component of the *O'Brien* test has not been satisfied. Specifically, plaintiffs argue that, absent a demonstration of localized health and safety effects, the town lacks the substantial governmental interest necessary to sustain the ordinance. They contend that, in a town like East Hartford which has had extensive experience with adult businesses, the *O'Brien* test can only be satisfied where a local business has caused negative effects in the community itself. Plaintiffs point to the fact that East Hartford conducted its own empirical studies which found no evidence of any secondary effects resulting from the operation of the Red Lantern or Aircraft Books, and that it is therefore inappropriate to allow the Town to rely on the experiences of other cities to justify the ordinance.

The plaintiffs further contend that the Supreme Court's decision in *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) is distinguishable. In *Renton,* the Court upheld an adult theatre dispersal ordinance enacted by Renton, Washington, the passage of which was based in large part on the adverse effects of such theaters experienced in neighboring Seattle, Washington. The *Renton* court held that:

The First Amendment does not require a city, before enacting an ordinance, to

---

7. The Town of East Hartford is a municipal corporation organized and existing pursuant to the Constitution and laws of the State of Connecticut. It is authorized by Connecticut General Statutes § 7–148(c)(7)(H)(ii) to:
 Regulate and prohibit the carrying on within the municipality of any trade, manufacture, business or profession which is, or may be, so carried on as to become prejudicial to public health, conducive to fraud and cheating, or dangerous to, or constituting an unreasonable annoyance to, those living or owning property in the vicinity.

Subsection (c)(7)(H)(xi) of the statute further authorizes the Town to:
 Provide for the health of the inhabitants of the municipality and do all things necessary or desirable to secure and promote the public health.
Finally, subsection (c)(7)(H)(xiii) authorizes the Town to:
 Make and enforce police, sanitary or other similar regulations and protect or promote the peace, safety, good government and welfare of the municipality and its inhabitants.

conduct new studies or to produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Id.* at 51, 106 S.Ct. at 931. The plaintiffs suggest the Supreme Court's rationale applies only in situations where, like Renton, Washington, a city or town has had no previous experience dealing with adult-oriented establishments. The court rejects such a narrow reading of *Renton*.

Although a municipality should look first to its own experiences in fashioning an appropriate legislative response, as indicated in *Renton* and the line of case which followed, it need not wait until it experiences adverse effects of its own before preventative measures may be adopted. *See Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585 (E.D.Wis.1988), *Dumas v. City of Dallas,* 837 F.2d 1298 (5th Cir.1988). Although evidence contemporaneously available to the East Hartford Town Council prior to its enactment of the ordinance did not indicate that a high volume of sex-related criminal activity or health hazards existed within the community, the court finds that it was proper for East Hartford to supplement its figures with data compiled in other communities. As the Fourth Circuit recently concluded:

> In assessing the reasonableness of local legislative determinations of ends and means under this quite deferential standard of constitutional review, we may not confine the local legislature to only what it knows and can foresee from purely local conditions already experienced. Legislatures can no more be held bound not to know what the whole world knows than can courts; legislative notice of facts must be deemed to run at least as wide as does judicial notice.
>
> In enacting local legislation of this sort, it therefore cannot be thought unreasonable (at least for constitutional review purposes) for local legislative bodies to assume that human nature—at least in respect of such basic matters as human sexuality and its commercial exploitation—will not vary greatly between generally comparable metropolitan areas within even so heterogeneous a society as that of twentieth century America. We therefore assess the reasonableness of Newport News' determination not solely on the basis—concededly sparse—of what had already demonstrably occurred within its geographical borders, but of what it might reasonably foresee in light of a sufficiently documented wider national experience properly reflected in matters of public record ... To insist that governmental interest justifying such legislation could only be found in specific local experiences and conditions would be unrealistically to require deliberate subjection to those experiences and conditions before attempting to avoid them.

*Wall Distributors,* 782 F.2d at 1169–70, n. 7.

Plaintiffs further claim that the enactment of the East Hartford ordinance was motivated by concerns unrelated to protection of public health and safety in violation of the third prong of *O'Brien.* They again emphasize that the Red Lantern and Aircraft Books are the only two adult bookstores in East Hartford. They claim that lengthy studies were made by the Town Council, and Police and Public Health Departments regarding alleged "secondary effects" emanating from the operation of their establishments, that these investigations revealed the existence of no violations or ill-effects, and that, despite the absence of any identifiable effects, East Hartford passed the ordinance anyway. Plaintiffs further claim that the enforcement of the ordinance will have "disastrous" consequences for the Red Lantern and Aircraft Books and result in a precipitous loss of sales of adult videos, and that this was known to the members of the Town Council prior to enacting the ordinance. From these allegations, plaintiffs would have the court conclude that the "predominant intent" of the ordinance was to put them out of business.

In *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585 (E.D.Wis.1988), the District Court for the Eastern District of

Wisconsin considered an "open-booth" ordinance similar to the one enacted by East Hartford.[8] Contemporaneous newspaper accounts in that case indicated that some of Delafield's civic leaders were motivated by a desire to close down the adult bookstores in their city. Despite this "disturbing" evidence, the court refused to attribute the mal-intentions of a few individuals to the entire legislature. The court found that:

> Superb Video was open for business and was the only such store in town when Delafield passed section 11.14. But that does not necessarily mean (as Superb Video suggests) that Delafield used its licensing power as a pretext to suppress protected speech. An equally plausible explanation for the sequence of events is that Delafield never had to consider the problem of AIDS in movie booths before Superb Video arrived.

*Id.* at 589. Unlike *Suburban Video*, there is nothing in the present case to indicate that East Hartford's legislators were guided by anything other than their concern for the protection of their constituents. Moreover, even if the ordinance would have an adverse economic impact on the plaintiffs' business, this is not reason enough to infer untoward legislative motives. The inquiry for First Amendment purposes is not concerned with economic impact. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (Powell, J., concurring). While a drop in plaintiffs' revenue may occur as a result of the enactment of this ordinance, this is not determinative.[9] *Doe v. City of Minneapolis,* 693 F.Supp. 774, 782 (D.Minn.1988). For these reasons, the court declines to accept the plaintiff's invitation to second guess the East Hartford Town Council regarding the likely effects of such an ordinance or to read between the lines of the ordinance in search of improper motives.

■ Plaintiffs next contend that even if a substantial governmental interest is found, the "open-booth" requirement is not the least restrictive means of achieving the Town's desired ends. Again, the court disagrees. As the *Wall Distributors* court observed, "the open booth regulation appears to be the least burdensome means of controlling offensive and illegal activity within booths that can be imagined." *Id.* at 1170. Plaintiffs' proposed alternatives are unpersuasive. First, plaintiffs suggest that a one-person-per-booth policy be implemented. This, of course, is the existing policy in both the Red Lantern and Aircraft Books which appears to have been ineffective.[10] It is obvious that East Hartford felt the need to enact additional regulations to achieve its public health objectives, and the court finds no constitutional defect in the method chosen. *Doe,* 693 F.Supp. at 784. The court finds the plaintiffs' other suggestion that additional clerks be hired to monitor the use of the video booths to be *more,*

8. The Delafield ordinance also requires that all adult-oriented establishments obtain a license in order to operate in the City. There are no similar licensing requirements in the East Hartford ordinance.

9. As noted above, the plaintiffs claim that the financial impact on their business resulting from the enactment and enforcement of the ordinance would be "disastrous." While the open booth requirement may lower the usage of the booths, and consequently cause lower financial incentives for operating adult book stores, the plaintiffs have offered no financial data in support of this claim, and the court refuses to speculate as to what may be the long-term economic effect on the bookstore owners. *Wall Distributors, Inc. v. Newport News, Virginia,* 782 F.2d 1165 (4th Cir.1986). As the *Suburban Video* court pointed out, "even if revenues were to decline, it would be for reasons that fall short of constitutional injury: 1) customers might try to see movies for free by looking over the shoulders of paying occupants in booths, and 2) customers might not want to see movies in open booths because they will no longer find the privacy to engage in sexual activity. As for the first claim, Superb Video can avoid the problem by having clerks patrol the movie-booth area or by rearranging the booths themselves so television monitors are not visible from the doorways ... As for the second claim, I "decline to hold that the 'right' to unobserved masturbation in a public theater is 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 591 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

10. Plaintiffs' testimony itself, although intended to demonstrate the strictness with which the one-person per booth policy is enforced, demonstrates that the existence of the policy alone is an inadequate deterrent in limiting the occupancy of the booths.

not less, intrusive than the open-booth requirement. Accordingly, the court finds that East Hartford has satisfied the *O'Brien* standards.

 Finally, plaintiffs argue that even if the ordinance is upheld in its entirety, it may only be applied prospectively to new adult-oriented establishments seeking to locate their business in East Hartford. Plaintiffs' claim to find support for this proposition in *Young* and *Renton*. Plaintiffs' reliance on these cases, however, is misplaced. Neither of the Supreme Court's holdings in these cases turned on whether the ordinances in question were applied retroactively. That this is so has been made clear by several post-*Renton* cases in which challenges to open-booth provisions requiring compliance by existing businesses have been upheld. *See Doe v. City of Minneapolis, Suburban Video, Inc. v. City of Delafield, supra.* Accordingly, the Red Lantern and Aircraft Books must comply with § 8–62 of the East Hartford Ordinance.

### Conclusion

Based upon the foregoing reasons, the requested permanent injunction sought by plaintiffs, Red Lantern Book Store and Aircraft Books and News, of § 8–62(b) of the East Hartford ordinance entitled "Regulation of Adult–Oriented Establishments" is denied. Judgment may enter for the defendants.

SO ORDERED.