688 A.2d 119

CHEZ SEZ VIII, INC., T/A UNITED VIDEO, DAVID PORTEN, T/A ADULT ENTERTAINMENT CENTER, HAMILTON AMUSE-MENT CENTER, INC., T/A VIDEO EXPRESS, L.O.J., INC., T/A THE EMPORIUM, AND VITO J. FRUGGIERO, INC., T/A RED BARN BOOKS, PLAINTIFFS-RESPONDENTS, v. DEBORAH PORITZ, ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY, AND THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 6, 1997—Decided February 7, 1997.

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*Carol Johnston*, Deputy Attorney General, argued the cause for appellants (*Peter Verniero*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel, *Ms. Johnston*, on the brief).

*Paul J. Cambria, Jr.*, of the New York Bar, argued the cause for respondents (*Steven S. Polinsky*, of the New Jersey Bar, attorney and on the brief; *Mr. Cambria, Jr.*, of the New York Bar, also on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

The State of New Jersey appeals from the Law Division's decision that *N.J.S.A.* 2C:33–12.2 was an unconstitutional, content-based restriction on free speech, as well as void for vagueness, and an order permanently enjoining its enforcement. We reverse.

Chez Sez VIII, Inc., t/a United Video, David Porten, t/a Adult Entertainment Center, Hamilton Amusement Center, Inc., t/a Video Express, L.O.J., Inc., t/a The Emporium, and Vito J. Fruggiero, Inc., t/a Red Barn Books (collectively referred to as plaintiffs) are retail book and video stores which sell and rent adult materials including video tapes, as well as provide private viewing booths for such materials. Plaintiffs obtained a judgment declaring *N.J.S.A.* 2C:33–12.2 [1] violative of their First Amendment rights.

The challenge to the statute here concerns essentially the provisions relating to booths or enclosures. The Law Division Judge granted preliminary restraints [2] against enforcement of the subject statute because he considered it a content based restriction on free expression since it only applied to "sexually oriented businesses." Applying strict scrutiny, the judge concluded that although the statute promoted a significant government interest in reducing the spread of sexually transmitted diseases, it was not the least restrictive means of achieving that goal. Additionally, the judge was of the opinion the statute was void for vagueness because ordinary persons would not know which type of booth facilitated sexual activity.

On appeal the State essentially argues: (1) the statute is a content neutral regulation, designed to ameliorate secondary effects of sexually oriented businesses, and (2) the statute is under-

---

[1] *N.J.S.A.* 2C:33–12.2(b) makes it a crime of the fourth degree for a person, who owns or operates a sexually oriented business, to offer booths which facilitate sexual activity. [*L.* 1995, *c.* 167, § 2, eff. Sept. 3, 1995].

[2] The State's motion for a stay was denied and a permanent injunction was issued on October 5, 1995.

standable to persons of average intelligence. Alternatively, it argues that if the statute is found to be vague, we should construe it in such a manner as to allow it to stand and excise any constitutional defect.

Governor Whitman signed into law Senate Bill No. 342 of 1995 (S–342) which, among other things, prohibits in Section 2 (*N.J.S.A.* 2C:33–12.2) commercial establishments from providing booths or similar enclosures "which facilitate sexual activity." *L.* 1995, *c.* 167, eff. Sept. 3, 1995. Thus, *N.J.S.A.* 2C:33–12.2 provides:

Sexually oriented businesses

a. As used in this act:

(1) "Sexually oriented business" means:

(a) A commercial establishment which as one of its principal business purposes offers for sale, rental, or display any of the following:

Books, magazines, periodicals or other printed material, or photographs, films, motion pictures, video cassettes, slides or other visual representations which depict or describe a "specified sexual activity" or "specified anatomical area"; or still or motion picture machines, projectors or other image-producing devices which show images to one person per machine at any one time, and whether the images so displayed are characterized by the depiction of a "specified sexual activity" or "specified anatomical area"; or instruments, devices, or paraphernalia which are designed for use in connection with a "specified sexual activity"; or

(b) A commercial establishment which regularly features live performances characterized by the exposure of a "specified anatomical area" or by a "specified sexual activity," or which regularly shows films, motion pictures, video cassettes, slides, or other photographic representations which depict or describe a "specified sexual activity" or "specified anatomical area";

(2) "Person" means an individual, proprietorship, partnership, corporation, association, or other legal entity.

(3) "Specified anatomical area" means:

(a) Less than completely and opaquely covered human genitals, pubic region, buttock or female breasts below a point immediately above the top of the areola; or

(b) Human male genitals in a discernibly turgid state, even if covered.

(4) "Specified sexual activity" means:

(a) The fondling or other erotic touching of covered or uncovered human genitals, pubic region, buttock or female breasts; or

(b) Any actual or simulated act of human masturbation, sexual intercourse or deviate sexual intercourse.

b. In addition to any activities proscribed by the provisions of *N.J.S.* 2C:33–12, *a person is guilty of maintaining a nuisance when the person owns or operates a*

*sexually oriented business which offers for public use booths, screens, enclosures* or other devices *which facilitate sexual activity by patrons.*

c. Notwithstanding any other provision of law, a municipality shall have the power to determine restrictions, if any, on the hours of operation of a [*sic*] sexually oriented businesses.

d. A person who violates this act is guilty of a crime of the fourth degree.

[Emphasis supplied].

Any establishment in violation of *N.J.S.A.* 2C:33–12.2 may be ordered closed for up to one year and is subject to forfeiture of property. *N.J.S.A.* 2C:33–12.1.[3]

The statute was enacted to stem the spread of sexually transmitted diseases. The Senate Judiciary Committee in considering S–342 was made aware of the substantial public health interests of other states and the means they employed in regulating private enclosures provided by adult entertainment establishments. Essentially, those jurisdictions were concerned with unsanitary conditions and the spread of sexually transmitted diseases fostered by private enclosures in buildings of public accommodation.

Judicial inquiry is limited when reviewing legislative notice.[4] Here, the legislative action was informed by various consider-

---

[3] *N.J.S.A.* 2C:33–12.1. Abating nuisance

> a. In addition to the penalty imposed in case of conviction under *N.J.S.* 2C:33–12 or under section 2 of P.L.1995, c. 167 (C. 2C:33–12.2), the court may order the immediate abatement of the nuisance, and for that purpose may order the seizure and forfeiture or destruction of any chattels, liquors, obscene material or other personal property which may be found in such building or place, and which the court is satisfied from the evidence were possessed or used with purpose of maintaining the nuisance. Any such forfeiture shall be in the name and to the use of the State of New Jersey, and the court shall direct the forfeited property to be sold at public sale, the proceeds to be paid to the treasurer of the county wherein conviction was had.
>
> b. If the owner of any building or place is found guilty of maintaining a nuisance, the court may order that the building or place where the nuisance was maintained be closed and not used for a period not exceeding one year from the date of the conviction.

[4] *Michael M. v. Sonoma County Superior Court,* 450 *U.S.* 464, 469–470, 101 *S.Ct.* 1200, 1204–1205, 67 *L.Ed.*2d 437, 443 (1981); *Palmer v. Thompson,* 403

ations. The Senate Judiciary Committee considered a memorandum by the Chief of the Judiciary Section in the Office of Legislative Services outlining the concern that private booths provided by sexually oriented businesses encourage anonymous sexual activity and are conducive to the spread of sexually transmitted diseases. The Legislature was made aware that the Third Circuit recently upheld a Delaware statute regulating such private booths or enclosures in *Mitchell v. Comm'n on Adult Entertainment Est.*, 10 *F.*3d 123 (3rd Cir.1993). Additionally a newspaper article in the *Atlantic City Press* was brought to the Committee's attention which described how New Jersey men often enter peepshow booths and gesture through an aperture known as a "glory hole" to an adjoining booth and engage in anonymous sexual acts. It was with this background that the Legislature enacted S–342.

## I.

The distinctions between speech and conduct are often difficult to parse, but when conduct is regulated solely because of its expressive attributes the Supreme Court has consistently held the regulation unconstitutional. *See e.g., United States v. Eichman,* 496 *U.S.* 310, 110 *S.Ct.* 2404, 110 *L.Ed.*2d 287 (1990) (burning flag); *Tinker v. Des Moines Independent Community School Dist.,* 393 *U.S.* 503, 89 *S.Ct.* 733, 21 *L.Ed.*2d 731 (1969) (wearing black arm bands); *Brown v. Louisiana,* 383 *U.S.* 131, 86 *S.Ct.* 719, 15 *L.Ed.*2d 637 (1966) (participating in a sit-in); *Stromberg v. California,* 283 *U.S.* 359, 51 *S.Ct.* 532, 75 *L.Ed.* 1117 (1931) (flying a red flag). Thus, the First Amendment has been construed by various courts to protect sexually explicit expression of various types. *TK's Video, Inc. v. Denton County, Tex.,* 24 *F.*3d 705, 707 (5th Cir.1994); *Mitchell v. Comm'n on Adult Entertainment Est.,* 10

*U.S.* 217, 224, 91 *S.Ct.* 1940, 1944, 29 *L.Ed.*2d 438, 444 (1971); *Cleveland Area Bd. of Realtors v. City of Euclid,* 88 *F.*3d 382, 388 (6th Cir.1996); *Two Guys From Harrison, Inc. v. Furman,* 32 *N.J.* 199, 226, 160 *A.*2d 265 (1960); *New Jersey Turnpike Auth. v. Sisselman,* 106 *N.J.Super.* 358, 367, 255 *A.*2d 810 (App.Div.), *certif. denied,* 54 *N.J.* 565, 258 *A.*2d 16 (1969).

*F.*3d 123, 130 (3rd Cir.1993); *see e.g., Barnes v. Glen Theatre, Inc.,* 501 *U.S.* 560, 111 *S.Ct.* 2456, 115 *L.Ed.*2d 504 (1991) (live nude dancing in adult book store and nightclub). While this form of expression is protected, the protection afforded it has been characterized as "only marginal[ ]." *Barnes v. Glen Theatre, Inc., supra,* 501 *U.S.* at 566, 111 *S.Ct.* at 2460, 115 *L.Ed.*2d at 511. The Supreme Court in *Young v. American Mini Theatres,* 427 *U.S.* 50, 96 *S.Ct.* 2440, 49 *L.Ed.*2d 310 (1976) recognized that "Specified Sexual Activities" may not be totally abrogated but its protection is "lesser [in] magnitude than the interest in untrammeled political debate." *Id.* at 70, 96 *S.Ct.* at 2452, 49 *L.Ed.*2d at 326. Moreover, a State "may legitimately use the content of these materials as the basis for placing them in a different classification." *Id.* at 70–71, 96 *S.Ct.* at 2452, 49 *L.Ed.*2d at 326.

■ A plain reading of *N.J.S.A.* 2C:33–12.2 makes clear that it does not purport to ban the viewing of sexually explicit material. Rather, it prohibits commercial establishments that offer sexually explicit material for distribution from providing "booths, screens, enclosures or other devices which facilitate sexual activity by patrons." *N.J.S.A.* 2C:33–12.2b. On its face the statute is intended to regulate sexual conduct as a health problem, not the materials presented.

In *Arcara v. Cloud Books, Inc.,* 478 *U.S.* 697, 106 *S.Ct.* 3172, 92 *L.Ed.*2d 568 (1986), the Supreme Court granted *certiorari* to consider whether the First Amendment barred enforcement of a statute which authorized the closure of a business that promoted prostitution and lewdness. In *Arcara,* the defendant was an adult bookstore in New York which provided booths for private viewing of sexually explicit videos. A police officer observed instances of prostitution at the premises and reported that the owners appeared aware of the sexual activity. As a result, a complaint was filed to close the store pursuant to New York Public Health Law § 2329. New York Public Health Law § 2320 designated a premises as a public health nuisance when used or maintained for the purpose of lewdness or prostitution. Under § 2329, a building

housing a public health nuisance could be closed for up to one year. In rejecting defendant's First Amendment argument, the Court "underscored the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct." *Id.* at 705, 106 *S.Ct.* at 3176, 92 *L.Ed.*2d at 577. The Court held that sexual activity was not absolutely protected and that First Amendment protection did not attach by "merely linking the words 'sex' and 'books.'" *Ibid.*

The Court in *Arcara* also rejected defendant's argument that the statutory effect of closing the store for one year impermissibly interfered with its protected right to sell books. *Id.* at 705–706, 106 *S.Ct.* at 3177, 92 *L.Ed.*2d at 577. The Court noted that civil and criminal remedies may affect First Amendment protected activities, but the proscription here was less offensive because defendant could sell the materials at other locations absent the nuisance. *Id.* at 706, 106 *S.Ct.* at 3177, 92 *L.Ed.*2d at 577.

When a statute favors one speaker over another, it is a form of content-based regulation. *Rosenberger v. Rector and Visitors of Univ. of Virginia,* 515 *U.S.* ——, ——, 115 *S.Ct.* 2510, 2516, 132 *L.Ed.*2d 700, 715 (1995); *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 *U.S.* 789, 804, 104 *S.Ct.* 2118, 2128, 80 *L.Ed.*2d 772, 786 (1984). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Univ. of Virginia, supra,* 515 *U.S.* at ——, 115 *S.Ct.* at 2516, 132 *L.Ed.*2d at 715.

Under current jurisprudence, a statute aimed directly at the suppression of sexually explicit material is considered content-based and "presumptively violates the First Amendment." *Mitchell v. Comm'n Adult Entertainment Est., supra,* 10 *F.*3d at 130; *see R.A.V. v. City of St. Paul,* 505 *U.S.* 377, 382, 112 *S.Ct.* 2538, 2542, 120 *L.Ed.*2d 305, 317 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 *U.S.* 105, 112 *S.Ct.* 501, 116 *L.Ed.*2d 476 (1991). A content-based regulation is uncon-

stitutional unless "necessary to serve a compelling state interest and ... narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n.*, 460 *U.S.* 37, 45, 103 *S.Ct.* 948, 955, 74 *L.Ed.*2d 794, 804 (1983); *see Carey v. Brown,* 447 *U.S.* 455, 461, 100 *S.Ct.* 2286, 2290, 65 *L.Ed.*2d 263, 270 (1980).

The Law Division here was of the opinion that *N.J.S.A.* 2C:33–12.2 was a content-based regulation because "[t]he plain words of the statute limit its operation to 'sexually oriented businesses.'" The judge deduced that if the statute were content neutral it would apply to all businesses which facilitate anonymous sexual activity and not only those which distribute or make available adult material. Apparently, he believed that the statute was a form of viewpoint discrimination.

However, where the statute's overall purpose is aimed at the secondary effects of speech, it is considered content neutral and thus scrutinized under the traditional time, place and manner standard. *Mitchell v. Comm'n Adult Entertainment Est., supra,* 10 *F.*3d at 130; *see Barnes v. Glen Theatre, Inc., supra,* 501 *U.S.* at 566, 111 *S.Ct.* at 2460, 115 *L.Ed.*2d at 511–512; *Renton v. Playtime Theatres, Inc., supra,* 475 *U.S.* at 46–48, 106 *S.Ct.* at 928–929, 89 *L.Ed.*2d at 37–38. Content neutral statutes are "those that 'are *justified* without reference to the content of the regulated speech.'" *Renton v. Playtime Theatres, Inc., supra,* 475 *U.S.* at 48, 106 *S.Ct.* at 929, 89 *L.Ed.*2d at 38 (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 *U.S.* 748, 771, 96 *S.Ct.* 1817, 1830, 48 *L.Ed.*2d 346, 364 (1976)). "As long as a statute 'serves purposes unrelated to the content of expression,' it is content-neutral, 'even if it has an incidental effect upon some speakers or messages but not others.'" *Presbytery of N.J. of Orth. Pres. Church v. Florio,* 902 *F.Supp.* 492, 518 (D.N.J. 1995) (quoting *Ward v. Rock Against Racism,* 491 *U.S.* 781, 791, 109 *S.Ct.* 2746, 2754, 105 *L.Ed.*2d 661, 675 (1989)).

Content neutral regulations are valid where "designed to serve a substantial government interest and do not unreasonably limit the alternative avenues of communication." *Renton v. Play-*

*time Theatres, Inc., supra,* 475 *U.S.* at 47, 106 *S.Ct.* at 928, 89 *L.Ed.*2d at 37; *see also Clark v. Community For Creative Non–Violence,* 468 *U.S.* 288, 293, 104 *S.Ct.* 3065, 3069, 82 *L.Ed.*2d 221, 227 (1984); *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 *U.S.* 640, 647–648, 101 *S.Ct.* 2559, 2563–2564, 69 *L.Ed.*2d 298, 306 (1981); *Chesapeake B & M, Inc. v. Harford County, Md.,* 58 *F.*3d 1005, 1010 (4th Cir.1995) ("The key inquiry is whether the regulations (1) are narrowly drawn to serve a substantial governmental interest and (2) allow for ample alternative avenues of communication.").

In *Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 130–131, the Third Circuit upheld a ban on private viewing booths in adult entertainment establishments. In applying *Renton*'s three part reasonable time, place, and manner test [5] the court said regulations of protected expression are valid if:

(1) they are justified without reference to the content of the regulated speech; (2) they are narrowly tailored to serve a significant or substantial government interest; and (3) they leave open ample alternative channels of communication.

[*Id.* at 130–131 (citing *Renton v. Playtime Theatres, Inc., supra,* 475 *U.S.* at 47–48, 106 *S.Ct.* at 928–929, 89 *L.Ed.*2d at 38) (other citations omitted) ].

Delaware requires [6] that one side of a viewing booth be open to a public room as follows:

---

[5] As the Third Circuit noted, "all federal courts that have addressed this issue have unanimously upheld the open-booth requirement as a valid exercise of state police power." *Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 142; *see e.g., Bamon Corp. v. City of Dayton,* 923 *F.*2d 470 (6th Cir.1991); *Doe v. City of Minneapolis,* 898 *F.*2d 612 (8th Cir.1990); *Postscript Enter. v. City of Bridgeton,* 905 *F.*2d 223 (8th Cir.1990); *Berg v. Health & Hospital Corp.,* 865 *F.*2d 797 (7th Cir.1989); *FW/PBS, Inc. v. City of Dallas,* 837 *F.*2d 1298 (5th Cir.1988), *vacated in part on other grounds,* 493 *U.S.* 215, 110 *S.Ct.* 596, 107 *L.Ed.*2d 603 (1990); *Wall Distribs., Inc. v. City of Newport News,* 782 *F.*2d 1165 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 *F.*2d 1243 (9th Cir.1982); *Grunberg v. Town of East Hartford, Conn.,* 736 *F.Supp.* 430 (D.Conn. 1989), *aff'd,* 901 *F.*2d 297 (2d Cir.1990); *Suburban Video, Inc. v. City of Delafield,* 694 *F.Supp.* 585 (E.D.Wis.1988); *Broadway Books, Inc. v. Roberts,* 642 *F.Supp.* 486 (E.D.Tenn.1986).

[6] Delaware's statute applies to "adult entertainment establishment," defined as:

No person shall own, operate, manage, rent, lease or exercise control over any commercial building, structure, premises or portion or part thereof, which contains: (1) *Partitions* between subdivisions of a room, portion or part of a building, structure or premises having an aperture which is *designed or constructed to facilitate sexual activity* between persons on either side of the partition; or (2) *Booths, stalls, or partitioned portions* of a room or individual rooms, used for the viewing of motion pictures or other forms of entertainment, having doors, curtains or portal partitions, *unless such booths, stalls, partitioned portions of a room or individual rooms so used shall have at least one side open to an adjacent public room so that the area inside is visible to persons in adjacent public rooms.* Such areas shall be lighted in a manner that the persons in the areas used for viewing motion pictures or other forms of entertainment are visible from the adjacent public rooms, but such lighting shall not be of such intensity as to prevent the viewing of the motion pictures or other offered entertainment.

[*Del.Code Ann.* tit. 24, § 1633(b) (1992) (emphasis supplied)].

Delaware's statute was held content neutral because it did not ban adult materials, but only regulated the place where such materials could be viewed. *Mitchell v. Comm'n on Adult Entertainment Est., supra*, 10 *F*.3d at 140. It did not regulate the content of materials viewed, but was aimed at the incidental effects which result from the use of closed booths, such as the spread of AIDS and other communicable diseases that are the potential product of unprotected sex. The Third Circuit held that the government had a substantial interest in reducing or eliminating private booths which facilitate such sexual activity. *Ibid.*

Delaware's statute expressly stated that it was intended to "eliminate the possibility of the spread of, or infection by, communicable diseases." *Del.Code Ann.* tit. 24, § 1631(a) (1992). The statute's legislative history reflected the Delaware Senate's concern about "anonymous sex," noting that such activity often took place at adult entertainment establishments and posed a threat to public health, and that private booths were " 'little more than masturbation booths' ... [where] seminal fluid was commonly

---

any commercial establishment, business or service, or portion thereof, which offers sexually oriented material, devices, paraphernalia or specific sexual activities, services, performance or any combination thereof, or in any other form, whether printed, filmed, recorded or live....

[*Del.Code Ann.* tit. 24, § 1602(2) (1992)].

found dripping down the walls and on the floor in puddles." *Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 142. The Delaware statute was designed to inhibit the spread of sexually related diseases. *Ibid.*

In determining whether the legislative decision was reasonably arrived at, the Third Circuit acknowledged the Legislature's capacity to take "legislative notice," analogous to judicial notice, of other jurisdictions' substantial need for regulation. *Id.* at 136, 142; *see Wall Distribs., Inc. v. City of Newport News,* 782 *F.*2d 1165, 1169 n. 7 (4th Cir.1986) (adopting theory of "legislative notice" allowing legislatures to take notice of matters of common knowledge); *Postscript Enter. v. City of Bridgeton,* 905 *F.*2d 223 (8th Cir.1990) (upholding legislation which restricted adult movie arcade's operations based upon *Wall Distribs.* theory of legislative notice). Therefore, the Third Circuit concluded that the Delaware Legislature's decision to ban private booths was not "a mere unsupported legislative preference for open booths or because the legislature arbitrarily and irrationally believed that closed booths contribute to a serious health problem." *Mitchell, supra,* 10 *F.*3d at 143.

Likewise the record supports the New Jersey Legislature's decision to ban booths which facilitate sexual activity in sexually oriented businesses. The Legislature was aware of the dangers to public health, particularly the current concern regarding the spread of AIDS, that such anonymous sexual encounters present, and the measures that other jurisdictions have taken in an attempt to minimize these dangers. *Cf. Behringer Est. v. Princeton Med. Ctr.,* 249 *N.J.Super.* 597, 630–631, 592 *A.*2d 1251 (Law Div.1991) (explaining the transmittal and dangers of Human Immunodeficiency Virus and Acquired Immunodeficiency Syndrome [AIDS] ). More particularly, the Legislature was cognizant of the fact that private booths which facilitate sexual activity by patrons are conducive to the spread of sexually transmitted diseases. Accordingly, the Law Division Judge correctly recognized that New Jersey has a substantial interest in eliminating such

booths that lead to "generally unhygienic condition[s]" and transmittal of communicable diseases. The Legislature could take notice of what has occurred in other states and could act on that information without waiting for the collection of similar information in this State from the operation of establishments catering to sexually oriented business. This was a reasonable, if not prudent, exercise of legislative power.

The second prong of the *Renton* analysis requires us to consider whether the enacted regulation is narrowly tailored to the government's significant interest in public health. *See Renton v. Playtime Theatres, Inc., supra*, 475 *U.S.* at 52, 106 *S.Ct.* at 931, 89 *L.Ed.*2d at 41. In general, where a statute affects speech, as opposed to activity, the means chosen to achieve the government's interest cannot be substantially broader than necessary. *Ward v. Rock Against Racism, supra*, 491 *U.S.* at 796–800, 109 *S.Ct.* at 2757–2758, 105 *L.Ed.*2d at 678–680. A content neutral regulation is not tested under the "least restrictive means" standard, but rather the restriction is considered "narrowly tailored 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Mitchell v. Comm'n on Adult Entertainment Est., supra*, 10 *F.*3d at 137 (citing *Ward v. Rock Against Racism, supra*, 491 *U.S.* at 799, 109 *S.Ct.* at 2758, 105 *L.Ed.*2d at 680 (quoting *United States v. Albertini*, 472 *U.S.* 675, 689, 105 *S.Ct.* 2897, 2906, 86 *L.Ed.*2d 536, 548 (1985))). "[T]he regulation 'need not be the least-restrictive or least-intrusive means of doing so,'" *Mitchell v. Comm'n on Adult Entertainment Est., supra*, 10 *F.*3d at 143 (citing *Ward v. Rock Against Racism, supra*, 491 *U.S.* at 798, 109 *S.Ct.* at 2757–2758, 105 *L.Ed.*2d at 680 (footnote omitted)), and "will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward v. Rock Against Racism, supra*, 491 *U.S.* at 800, 109 *S.Ct.* at 2758, 105 *L.Ed.*2d at 680.

*Mitchell* rejected the bookstore's argument that there were better means to achieve the government's interest in preventing

the spread of sexually transmitted disease, noting that while there may be many options available to a Legislature, it was not the proper function of the judiciary to substitute its judgment for that of the Legislature. *Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 143. The State "did not have to show that '[t]he open booth regulation appears to be the least burdensome means of controlling offensive and illegal activity within the booths that can be imagined.'" *Id.* at 144 (quoting *Wall Distribs., Inc. v. City of Newport News, supra,* 782 *F.*2d at 1170). The regulation was held not offensive to First Amendment protection because adult materials may still be viewed. *Ibid.*

In the case at bar, the Law Division Judge applied strict scrutiny and found the statute was not the "least restrictive means" to address the problem, construing it to be a complete ban on all booths. In so doing, the judge misinterpreted the statute. As we construe the statute [7] on its face, only booths or areas screened or enclosed so as to preclude visibility from public areas facilitate sexual activity and are prohibited on premises occupied by sexually oriented businesses. Given this construction, the statute does not ban booths which do not facilitate sexual activity. The appropriate standard to determine tailoring is under the content neutral time, place and manner analysis, *i.e.,* whether a substantial government interest would be "achieved less effectively absent the regulation." *Ward v. Rock Against Racism, supra,* 491 *U.S.* at 799, 109 *S.Ct.* at 2758, 105 *L.Ed.*2d at 680 (quoting *United States v. Albertini, supra,* 472 *U.S.* at 689, 105 *S.Ct.* at 2906, 86 *L.Ed.*2d at 548).

New Jersey's Legislature was presented with a substantial, if not compelling problem—the spread of sexually transmitted

---

[7] Courts are obligated to narrowly construe a statute to save it from any constitutional defect. *State v. Mortimer,* 135 *N.J.* 517, 533–534, 641 *A.*2d 257, *cert. denied,* 513 *U.S.* 970, 115 *S.Ct.* 440, 130 *L.Ed.*2d 351 (1994); *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462 *A.*2d 573 (1983); *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57, 75, 411 *A.*2d 168 (1980).

disease through anonymous sexual activity occurring in adult bookstores' private booths. To resolve this public health concern, the Legislature prohibited commercial adult entertainment establishments from providing "booths, screens, enclosures or other devices which facilitate sexual activity by patrons." *N.J.S.A.* 2C:33–12.2b. Other jurisdictions place specific physical restrictions on the types of booths permitted, in effect requiring the inside of the booth to be visible from public areas of the establishment. *See e.g., Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 142 (open on one side to a public room); *Bamon Corp. v. City of Dayton,* 923 *F.*2d 470 (6th Cir.1991) (removal of doors); *Doe v. City of Minneapolis,* 898 *F.*2d 612 (8th Cir.1990) (open on one side); *Berg v. Health & Hospital Corp.,* 865 *F.*2d 797 (7th Cir.1989) (open on one side to a public room); *Wall Distribs., Inc. v. City of Newport News, supra,* 782 *F.*2d 1165 (visible from continuous aisle); *Suburban Video, Inc. v. City of Delafield,* 694 *F.Supp.* 585 (E.D.Wis.1988) (removal of doors). The rationale behind such requirements is that visibility deters sexual activity.

New Jersey's statute, while not specifying physical requirements, accomplishes the same result. As we construe the Act, enclosures meeting other jurisdictions' physical requirements would be permissible under the State's statute. For example, if the interior of a booth is visible to a public room it would not be considered conducive to sexual activity any more than other areas of the business that are open to the public and visible to visitors, customers and store personnel. Thus, New Jersey's statute embraces all the physical requirements of other jurisdictions, and leaves it to each proprietor to design a viewing area which will not facilitate sexual activity.

■ The final prong of the *Renton* analysis is whether there are reasonable alternative channels of communication available for the restricted form of "speech." *See Renton v. Playtime Theatres, Inc., supra,* 475 *U.S.* at 53, 106 *S.Ct.* at 932, 89 *L.Ed.*2d at 41. "[A] restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Members of*

*City Council v. Taxpayers for Vincent, supra,* 466 *U.S.* at 812, 104 *S.Ct.* at 2132, 80 *L.Ed.*2d at 791. It is not enough that there be alternative modes of communication, those modes must be practical. *New Jersey Citizen Action v. Edison Tp.,* 797 *F.*2d 1250, 1261 (3d Cir.1986).

In holding that the Delaware ban on private viewing booths permitted ample alternative channels of communication, *Mitchell v. Comm'n on Adult Entertainment Est., supra,* 10 *F.*3d at 144 noted that "[n]othing in [the Delaware Act] limits the number of viewing booths or the type of material that can be shown within the booths." Nor did the statute preclude rental or purchase of such material.

With respect to this aspect, we consider "whether those methods not prohibited by the challenged regulation (viewing the films, etc., with an open door) are equivalent to the prohibited methods (viewing the films, etc., behind a closed door)." *Berg v. Health & Hospital Corp., supra,* 865 *F.*2d at 803. *Berg* upheld legislation which required booths to be open on one side because it did not limit the available materials and did not prohibit people from watching films in individual enclosures. The "viewing public" was not " 'denied access to the market or ... unable to satisfy its appetite for sexually explicit fare.' " *Ibid.* (quoting *Young v. American Mini Theatres, supra,* 427 *U.S.* at 62, 96 *S.Ct.* at 2448, 49 *L.Ed.*2d at 321).

 *N.J.S.A.* 2C:33–12.2 likewise leaves ample alternative modes for viewing adult materials. They may still be purchased or rented. In addition, nothing in the statute prohibits the use of coin-operated vending machines to view these materials, even in booths, so long as these booths do not facilitate sexual activity. Hence, the statute does not deny access to these materials.

### III.

Plaintiffs contend that the statute must be more exacting because it is a penal law which intrudes upon free expression. *See*

*State v. Cameron,* 100 *N.J.* 586, 592, 498 *A.*2d 1217 (1985) ("The scrutiny to be accorded legislation that trenches upon first amendment liberties must be especially scrupulous."); *see also Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 119 n. 16, 462 *A.*2d 573 (1983). The owners of sexually oriented businesses also argued that *N.J.S.A.* 2C:33–12.2 was unconstitutionally vague because it does not define what type of enclosure facilitates sexual activity.

 The vagueness doctrine is premised on the notion that the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 *U.S.* 104, 108, 92 *S.Ct.* 2294, 2298, 33 *L.Ed.*2d 222, 227 (1972); *see also Town Tobacconist v. Kimmelman, supra,* 94 *N.J.* at 118, 462 *A.*2d 573 ("Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement."). Statutes are void if their "prohibitions are not clearly defined." *Grayned v. City of Rockford, supra,* 408 *U.S.* at 108, 92 *S.Ct.* at 2298, 33 *L.Ed.*2d at 227. Statutes need not be meticulous in specificity, but should be afforded "flexibility and reasonable breadth," *id.* at 110, 92 *S.Ct.* at 2300, 33 *L.Ed.*2d at 227, given the nature of the problem and wide range of human conduct. *See Smith v. Goguen,* 415 *U.S.* 566, 581, 94 *S.Ct.* 1242, 1251, 39 *L.Ed.*2d 605, 616 (1974).

 In determining vagueness, a common sense approach is appropriate in construing the enactment, *see SDJ, Inc. v. City of Houston,* 837 *F.*2d 1268, 1278 (5th Cir.1988), in terms of the persons who may be subject to it, *Town Tobacconist v. Kimmelman, supra,* 94 *N.J.* at 118–120, 462 *A.*2d 573, and in context with its intended purpose. *State v. Cameron, supra,* 100 *N.J.* at 591, 498 *A.*2d 1217. Since the challenge here to *N.J.S.A.* 2C:33–12.2 is not as applied, the statute must be reviewed on its face to determine if it is "impermissibly vague in all its applications." *Id.* at 593, 498 *A.*2d 1217 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 *U.S.* 489, 495–497, 102 *S.Ct.* 1186, 1192, 71 *L.Ed.*2d 362, 369 (1982)).

*Central Ave. Enterprises, Inc. v. City of Las Cruces,* 845 *F.Supp.* 1499 (D.N.M.1994), held a penal statute impermissibly vague in relation to adult entertainment. There the district court held the Las Cruces ordinance void for vagueness because it failed to define "sexual activity" or "specified anatomical areas." *Id.* at 1503–1504. When terms are defined, however, a vagueness argument generally fails. *See e.g., Young v. American Mini Theatres, supra,* 427 *U.S.* at 60–62, 96 *S.Ct.* at 2447–2448, 49 *L.Ed.*2d at 320–321; *Berg v. Health & Hospital Corp., supra,* 865 *F.*2d at 803. *See also State v. Lee,* 96 *N.J.* 156, 166, 475 *A.*2d 31 (1984). Here, *N.J.S.A.* 2C:33–12.2 clearly defines specified sexual activity.

In addition, *N.J.S.A.* 2C:33–12.2a(4) contains the verb "facilitate," which has uniformly been found not to offend the vagueness doctrine. *See e.g., Matter of Kaster,* 454 *N.W.*2d 876 (Iowa 1990) (reasoning that proscribed criminal activity was clearly defined and "facilitate" in the context of a forfeiture statute was not vague); *People v. Chastain,* 733 *P.*2d 1206, 1209 (Colo.1987) (recognizing broad definition of proscribed tools which facilitate burglary reflected Legislature's understanding that "a burglar's choice of tool is limited only by his imagination and ingenuity"); *State v. Bush,* 195 *Mont.* 475, 636 *P.*2d 849, 852 (1981) (facilitate is common word giving fair warning of prohibited conduct).

In holding the open booth ordinance in *Berg v. Health & Hospital Corp.* not vague and that people of common intelligence could identify which establishments were subject to the ordinance, the Seventh Circuit reasoned:

> the ordinance and its regulations *plainly are directed at those establishments which provide individual booths where high-risk sexual activity may occur and to businesses that offer as part of their business the entertainment to be viewed within the enclosure.* And, although the term "entertainment" is arguably general, when read in the particular context of this ordinance, it cannot be said that it is beyond the grasp of persons of ordinary intelligence.
>
> [*Berg v. Health & Hospital Corp., supra,* 865 *F.*2d at 803 (citations omitted)].

New Jersey's statute is not vague. It adequately defines the proscribed conduct and instructs owners of commercial establishments not to facilitate such conduct on their premises by providing

booths, enclosures or other devices not open to any public area. For example, booths which do not have apertures known as "glory holes" in their walls and are also open to public view would not be violative of the statute. The use and configuration of booths and enclosures, and their appropriate lighting is otherwise left by the Legislature to common sense and the informed discretion of a reasonable person. Through simple supervision, owners can monitor and detect the activities of their patrons.

The order declaring *N.J.S.A.* 2C:33–12 unconstitutional is reversed. The restraints imposed against enforcement thereof are vacated.