

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-1997

# Ben Rich Trading Inc v. Vineland

Precedential or Non-Precedential:

Docket
95-5846

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Ben Rich Trading Inc v. Vineland" (1997). *1997 Decisions*. Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 15, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 95-5846

BEN RICH TRADING, INC.; ALEXANDER TROMBETTA

v.

CITY OF VINELAND; JOSEPH E. ROMANO, MAYOR;
MARK RUSKOSKI, President; MICHAEL I. PANTALIONE;
GARY L. STANKER; LEA L. SHAPIRO; ROBERT G. RONE;
JOHN ZAGARI; ANTHONY BRACALL; DAVID RICCI;
STANLEY PANCO; ROBERT BLOUGH; PAUL TRIVELLINI;
JOHN FUENTES; EDWIN BERGAMO, JR.

CITY OF VINELAND,
        Appellant

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civil Action No. 95-cv-04980)

Argued July 23, 1997

BEFORE: SLOVITER, Chief Judge
and ROTH, Circuit Judges, and LUDWIG, District Judge*

(Opinion Filed: September 15, 1997)

_____
* Hon. Edmund V. Ludwig, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.


        Gerald T. Ford (Argued)
        Landman, Corsi, Ballaine & Ford
        Newark, N.J. 07102

         Attorney for Appellant

        F. Michael Daily, Jr. (Argued)
        Quinlan, Dunne & Daily
        Merchantville, N.J. 08109

         Attorney for Appellee

OPINION OF THE COURT

SLOVITER, Chief Judge.

The City of Vineland appeals from a preliminary injunction issued by the district court which (1) enjoined the City from enforcing a municipal ordinance that restricted the hours of operation of sexually oriented businesses and (2) enjoined the City from enforcing a municipal ordinance that prohibited live entertainment in private "conversation booths" in adult bookstores. The City argues that the ordinances were supported by sufficient evidence of secondary effects to satisfy the intermediate level of scrutiny applicable to regulations of sexually oriented businesses under City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986).

I.

A.

FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 1995, appellee Ben Rich Trading, Inc. entered into a lease and purchase agreement for a two-story building with an adjacent 34-space parking lot with the intention of transforming it into an adult entertainment center. The premises front on a state highway and there are varied commercial businesses located in the area, including

2

a restaurant/bar next door and a WaWa 24-hour convenience store across the highway.

The first floor of the building consisted of three large open areas and an office; the second floor was designed as a residential apartment with a separate outside entrance. Previously, the premises had been used as a "Teen Nightclub" and had been configured with a dancefloor, lounge area and a video arcade. According to Vineland's Zoning Ordinance, the premises are located in a "B-2, Highway Business Zone," which, at the time Ben Rich took possession, permitted uses such as adult book stores, indoor theaters, bars and taverns, amusement facilities including video arcades, steam baths, and drive-in theaters.

On May 1, 1995, Ben Rich advised Robert Blough, Vineland's Zoning Officer, of its intention to use the premises to exhibit live and video entertainment, as well as for the sale of books, videos and novelties of "an adult nature." App. at 22. On May 3, 1995, Blough replied by letter that such an adult entertainment center constituted a permitted use under the City's zoning regulations but

that Ben Rich would nevertheless have to acquire site plan approval because an adult entertainment center represented a "change in use." App. at 25. Thereafter, Ben Rich filed an application for site plan approval with the Planning Board of the City of Vineland. Upon review of this application, Blough reversed his earlier position and informed Ben Rich that the proposed live entertainment in a "conversation booth" setting, whereby a patron in a booth could observe a live performer through glass and could communicate with the dancer through a telephone hook-up, was not a permitted use. App. at 27.

Blough also advised the City's Minor Site Plan and Subdivision Committee at the hearing on Ben Rich's application that live entertainment in conversation booths was not a permitted use and could not receive site plan approval. Ben Rich then withdrew its request for conversation booths in order to receive the Committee's approval for the site plan, which it secured, and on August 15, 1995 it opened an adult book store with booths for the viewing of sexually explicit videos. Meanwhile, it appealed Blough's decision that the proposed conversation booths

were an impermissible use to the City's Zoning Board of Adjustment. Ben Rich requested that in the alternative it be granted a variance to allow its proposed live entertainment in conversation booths.

The Zoning Board of Adjustment held a hearing on August 16, 1995, but then adjourned until September 20, 1995 so that Board members could engage in additional investigation. On August 22, 1995, while the Zoning Board was adjourned, the Vineland City Council enacted the two ordinances at issue. Ordinance 95-55 limited the hours of operation for sexually oriented businesses, including adult bookstores, from 8:00 a.m. to 10:00 p.m., Mondays through Saturdays. App. at 39. Ordinance 95-56 prohibited live entertainment in private booths within adult bookstores by amending the "conditional uses" section of the zoning ordinance to provide:

> (1) Uses within the confines of the adult bookstore are restricted to the sale or rental of books, videos and novelties, and on-site rental for viewing of videos or movies.

> (2) Specifically prohibited within the confines of an adult bookstore is live entertainment through the use of individual or conversation booths which allow privacy between patrons and live entertainers; private

use of booths, screens, enclosures or other devices
which facilitate sexual activity by patrons.

App. at 44.

On September 20, 1995, the Zoning Board denied Ben
Rich's appeal of the restriction on conversation booths as
well as its application for a variance, expressly basing its
decision on the passage of Ordinance 95-56. App. at 225-
26.

B.

DISTRICT COURT PROCEEDINGS

On September 26, 1995, Ben Rich filed a complaint in
the District Court of New Jersey pursuant to 42 U.S.C.

SS 1983 and 1988, alleging that Vineland Ordinances 95-55
and 95-56 violated its First Amendment right to exhibit and
distribute sexually explicit materials. The district court
granted a temporary restraining order on the operation of
the hours ordinance and scheduled a preliminary
injunction hearing.

At the October 10, 1995 hearing the district court
acknowledged that under City of Renton v. Playtime
Theatres, 475 U.S. 41 (1986), a municipality is entitled to
regulate constitutionally protected but sexually explicit
speech as long as the regulation is directed solely towards
ameliorating the purported secondary effects of such
speech and is not directed at its content. The district court
also acknowledged that, under Renton, a municipality does
not have to conduct studies of its own documenting the
purported secondary effects that the city hopes to control,
but it can rely on studies or evidence accumulated by other
jurisdictions in order to demonstrate the content-neutrality
of its regulatory approach. App. at 196. Nevertheless, the
court concluded that the City of Vineland had failed to
demonstrate how the hours ordinance would remedy any
secondary effects from the adult theaters in the City itself.

In colloquy at the hearing, the court stated:

> [The cases] require that there be an identifiable
> secondary effect that exists reasonably under the
> circumstances of this case in Vineland and not
> because maybe it exists someplace else. And again I,
> please, want you to understand, I'm not suggesting
> that you need a study under Renton, but I do think we

> have to in keeping with the Mitchell case look to the restriction and see if it's intended to reduce the undesirable secondary effect.

App. at 196. The district court's reference to "the Mitchell case" was to this court's decision in Mitchell v. Comm'n on Adult Entertainment Establishments, 10 F.3d 123 (3d Cir. 1993), sustaining a Delaware statute that restricted the hours of operation of adult entertainment centers.

At the same hearing, counsel for Vineland asked if the court also intended to address the legality of Ordinance 95-56 which prohibited live entertainment in conversation

5

booths. See App. at 201-02. The court chose not to address that issue at that hearing, but offered the parties five days to submit briefs on the constitutionality of Ordinance 95-56. However, the court made clear that it believed the essence of Ordinance 95-56 to be a complete prohibition on the exhibition of live entertainment in adult bookstores:

> But the ordinance does appear to read a complete prohibition, which seems to be inconsistent with Renton from the Mitchell case [sic] that wanted to narrowly tailor.... If I then have all the submissions, I'll certainly try to compose a response to what we've heard today.

App. at 202. Neither party submitted any additional material.

On October 31, 1995, the court entered an order enjoining the City from enforcing the Ordinances "to the extent that they prohibit plaintiffs from continuing the Monday through Saturday hours of operation of 9:30 A.M. to 1:30 A.M. consistent with [the] court's previous orders." App. at 209. The court also enjoined the City from enforcing Ordinance 95-56 "to the extent that it contains a complete prohibition on live entertainment through the use of individual or `conversational booths.' " App. at 210. However, the court gave the City defendants leave"to petition the court to amend this injunction at such time as they can demonstrate a link between a reasonable prohibition on the booths and the government's health interest in this situation." App. at 210. Regretfully, the court's order did not include any written or explicit oral findings of fact or conclusions of law, which would have been helpful in our review of the rationale for the order entered.

On November 3, 1995, Ben Rich moved the court for an additional order permitting it to "proceed with the offering to the public of live entertainment in a `conversational booth' setting and enjoining the Defendants from preventing or interfering with same," app. at 212, on the ground that the sole basis for the decision of the Zoning Board was Ordinance 95-56, which the district court had now declared unconstitutional. At the hearing on Ben

6

Rich's motion, the City argued that Ben Rich should be required to return to the Zoning Board for a decision whether conversation booths were a permitted use as an Indoor Theater under its original zoning regulations, regardless of the unenforceability of Ordinance 95-56, as the Zoning Board had never addressed that issue.

The district court believed that the Zoning Board could not constitutionally decline to classify Ben Rich's conversation booths as a permissible use as Indoor Theater in light of the classification of video presentations in similar booths as Indoor Theater. The court stated:

> But if it's an issue that eventually will lend itself to a constitutional interpretation, then I think many times the court should just try to make that interpretation. If it eventually is going to end up [in federal court], there's no sense of having the delay.
>
> . . .
>
> I would think that without the ordinance and with the constitutional principles in place, that there is nothing really to impede them to start moving forward.

App. at 278, 280.

The court reminded the City that it was free to amend its ordinance in order to put reasonable restrictions on conversation booths and conform with the requirements of Renton and Mitchell. See, e.g., app. at 279 ("But there is the opportunity for the City of Vineland to put sufficient contours around the utilization of those booths that would meet and justify the least restrictive manner of control that would be consistent with the first amendment speech and expressive conduct.").

The court entered two supplemental orders on December 1, 1995. The first refined the earlier order relating to the hours ordinance and stated that "Plaintiffs' allowed hours of operation shall be no different than those of other

commercial businesses existing within the B-2 business zone." App. at 296. The second order permitted Ben Rich to "herewith proceed with the offering of live entertainment in a conversational booth setting as originally requested by them in a site plan submitted and duly filed with the

Planning Board of the City of Vineland," app. at 298, but contained the proviso that:

> [T]he rulings contained herein shall in no way affect the Defendants' rights to enact legislation which they deem appropriate in order to protect the public health and welfare from adverse secondary effects of an adult oriented business. Plaintiffs by proceeding under the terms of this Order do so at the peril of being subjected in the future to such appropriate and lawful regulations as the City of Vineland may enact and may apply to the Plaintiffs in accordance with Constitutional and State Law.

App. at 298. The City appeals from the November 2, 1995 preliminary injunction order and from the December 1 orders.

II.

It is surprising that although the underlying orders on appeal are preliminary injunctions, neither party discusses the standard for a preliminary injunction nor is there any reference to that standard in the district court's orders or discussion. We have found no stipulation in the record by the parties that consolidated the preliminary injunction hearing with a trial on the merits, as permitted under Rule 65(a)(2) of the Federal Rules of Civil Procedure, and we are not free to disregard the procedural posture in which the orders are presented on appeal. Thus, we review the district court's grant of a preliminary injunction to ascertain whether plaintiff made the necessary showing that it is likely to prevail on the merits, will suffer irreparable injury if injunctive relief is not granted, and that the injunction is generally in the public interest. See Bradley v. Pittsburgh Bd. Of Educ., 910 F.2d 1172, 1175 (3d Cir. 1990).

III.

Speech that is sexually explicit but not "obscene," either in the form of film, text, or live presentation, must be accorded First Amendment protection. See Schad v. Borough of Mount Ephraim, 452 U.S. 61, 65-66 (1981);

Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir. 1997) (en banc). Any regulation of such sexually explicit speech that is aimed primarily at suppressing the content of the speech is subject to strict scrutiny by the court and, unless justified by a compelling governmental interest, is presumptively unconstitutional. See Renton, 475 U.S. at 46. However, if a regulation's primary purpose is to ameliorate the socially adverse secondary effects of speech-related activity, the regulation is deemed content-neutral, and is accordingly measured by intermediate scrutiny, under the Court's traditional time, place, manner doctrine. See Turner Broadcasting System, Inc. v. F.C.C., 512 U.S. 622, 642 (1994); Phillips, 107 F.3d at 171.

Vineland's ordinances at issue are purportedly directed at curbing the secondary effects of Ben Rich's speech related activity. Time, place, manner regulations of protected speech are valid if:

> (1) they are justified without reference to the content of the regulated speech;

> (2) they are narrowly tailored to serve a significant or substantial government interest; and

> (3) they leave open ample alternative channels for communication.

Mitchell, 10 F.3d at 130.

A.

THE CLOSING HOURS ORDINANCE

Ordinance 95-55 provides:

> A sexually oriented business as defined by N.J.S. 2C:33-12.1 2(a) and (b) including adult book stores may not be open for business before 8:00 a.m. or after 10 p.m., Mondays through Saturdays or on any Sunday or legal holiday.

App. at 65.

"The principal inquiry in determining content neutrality, in speech cases generally and in time, place, manner cases

in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Despite Ben Rich's protests, there was no evidence at the hearing that the City of Vineland specifically targeted Ben Rich's establishment or that "the predominate purpose for enacting the ordinances was to suppress constitutionally protected forms of expression." Brief of Appellee at 13. To the contrary, the City attempts to justify the regulation "without reference to the content of the regulated speech," Renton, 475 U.S. at 48, and its burden for proving such content neutrality is not heavy. According to the Court in Renton, if an ordinance does "not ban adult theaters altogether" but merely bans them from certain parts of the city, it is properly analyzed as a time, place, manner restriction. Id. at 41.

Nevertheless, under this framework the City must still have presented evidence of "incidental adverse social effect that provides the important governmental interest justifying" the content neutral regulation and must be able to "articulate and support its argument with a reasoned and substantial basis demonstrating the link between the regulation and the asserted governmental interest." Phillips, 107 F.3d at 173 (internal quotations omitted).

Ben Rich contends that, far from justifying the content neutrality of the ordinance on a reasoned basis, Vineland produced no evidence that it considered secondary effects of adult establishments at the time it passed the ordinances. However, in our recent en banc decision in Phillips, which was decided after the district court entered the orders on appeal, we rejected the argument that a municipality's justification must be apparent "at the time of adoption," or "before taking [legislative] action." Phillips, 107 F.3d at 178. Although we reiterated the requirement that a municipality "shoulder the burden of building an evidentiary record that would support a finding that . . . [governmental] interests would be jeopardized in the absence of an ordinance," id. at 173, we also held that such a record could be established in the court after legislation is passed and challenged, id. at 178.

We stated that:

10

> There is a significant difference between the requirement that there be a factual basis for a legislative judgment presented in court when that judgment is challenged and a requirement that such a

> factual basis have been submitted to the legislative body prior to the enactment of the legislative measure. We have always required the former; we have never required the latter.

Id. Thus, in Phillips we refused to hold unconstitutional a borough's ordinance that zoned out the plaintiff 's adult bookstore despite the fact that the borough had not made a pre-enactment record before the legislature regarding secondary effects and presented no such evidence in the district court. Instead, we remanded the case to the district court in order to give the borough an opportunity to develop such evidence. See Phillips, 107 F.3d at 181.

In this case, because Vineland did come forward as required by Phillips "with a required showing in the courtroom once the challenge [was] raised," id. at 178, we examine whether its showing was adequate. In the district court, Vineland relied both on the evidence presented to the New Jersey legislature in connection with its consideration and subsequent passage of a state statute on July 5, 1995 dealing with almost identical issues, and on the record presented in support of the Delaware statute that we upheld in Mitchell.

It placed particular emphasis on the New Jersey record. Before enactment of the New Jersey statute, which authorized municipalities to restrict the hours of operation of adult oriented businesses and made it a crime to "own[ ] or operate[ ] a sexually oriented business which offers for public use booths, screens, enclosures, or other devices which facilitate sexual activity by patrons," see N.J.S.A. 2C: 33-12.2, the New Jersey legislature had heard testimony from various witnesses who described how adult establishments contribute to crime and litter in surrounding areas and how private booths within these stores encourage people to have unprotected sex with anonymous partners and thereby facilitate the spread of sexually transmitted diseases, particularly AIDS. See app. at 79 (Testimony of John Tumulty, Chief of Legislative

11

Section of New Jersey Office of Legislative Services, to Senate Judiciary Committee); app. at 80-100 (Testimony and Exhibits by Debbie Crook, President of Atlantic County Branch of American Family Association of New Jersey, to Senate Judiciary Committee); app. at 110 (Testimony of Susan Grant, State Director of Concerned Women of America, to Assembly Judiciary Committee); app. at 116-19 (Testimony of Larry Etzweiler, Deputy Attorney General of New Jersey, to Assembly Judiciary Committee).

Testimony was presented to the relevant New Jersey legislative committees that a similar statute enacted by Delaware that prohibited operation of adult establishments before 10 a.m. and after 10 p.m., Mondays through Saturdays, and all day on Sundays and legal holidays, had been upheld against constitutional challenge by this court in Mitchell. Larry Etzweiler, New Jersey Deputy Attorney General, appeared before the Judiciary, Law and Public Safety Committee of the New Jersey State Assembly and told the members of that Committee that in their considerations of the pending bill they

> could deem the hours-of-operation restriction as advancing the goal of affording neighbors peace and quiet at least during part of the day, and of diminishing the "noise, excessive parking, and the presence of discarded sexually oriented material on residential lawns that adult entertainment establishments cause."

App. at 118 (quoting Mitchell, 10 F.3d at 136).

In this case, Etzweiler filed an affidavit in the district court describing some of the evidence that had been presented to the New Jersey legislative committees, and he stated that the "Committee members understood that patrons are more likely to discard sexually oriented materials on residential lawns during the cover of night than during the openness of broad daylight." App. at 118. In Mitchell, we had found such a justification to be both content neutral and substantial. The studies and legislative record in support of the hours regulation for adult theaters that was presented in Mitchell and other courts, see, e.g., Star Satellite v. City of Biloxi, 779 F.2d 1074, 1077-78 (5th

12

Cir. 1986), may have been more extensive than those provided by either Vineland or New Jersey, but we cannot hold that it was impermissible for Vineland to rely on the experiences, studies and conclusions of other jurisdictions about the secondary effects of adult theaters. See Renton, 475 U.S. at 51-52 ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.")

Notwithstanding the district court's acknowledgment that Vineland was entitled to rely on studies and experiences

from other jurisdictions in justifying their time, place, manner regulation, the court apparently believed that Vineland was required to specify a "linkage" between its own experiences and those of the jurisdictions producing the studies upon which it intended to rely. App. at 171. The court noted that Vineland did not show, for example, that the adult bookstores were near residential areas susceptible to late-night litter or that there is a parking problem of the kind that may have existed in Delaware. However, the relevant cases do not impose a requirement that Vineland lay out in specific detail how its situation is sufficiently similar to Delaware's or New Jersey's in order to make their studies relevant.

As Vineland is a municipality within New Jersey, the studies presented to the New Jersey legislature could "reasonably [be] believed to be relevant to the problem" Vineland was facing. See Phillips, 107 F.3d at 174. The same can be said of the relevance of the Delaware studies. The various jurisdictions are not so geographically distant nor demographically distinct as to suggest that they do not share comparable urban problems, and Ben Rich has not argued otherwise.

The district court was also troubled by the apparent underinclusiveness of Vineland's ordinance, noting that notwithstanding Vineland's assertion that it needed the hours ordinance to limit parking and reduce the "discard[ing] [of] sexually oriented material on residential lawns," app. at 118, Vineland did not attempt to limit the

13

hours of the nearby WaWa and bar/restaurant or other stores selling adult magazines, which presumably also produce noise and parking problems, see app. at 120-124.

The district court's concern does not warrant striking down the Vineland ordinance. As Vineland points out on appeal, on its face Ordinance 95-55 covers any "sexually oriented businesses" and thus may be enforceable against the other stores in the City that sell adult magazines, an issue we do not decide. More important, we have held that a state or municipality may regulate hours of adult businesses differently than other businesses without raising a strong inference of discrimination based on content. We stated in Mitchell: "The content of the sexually explicit speech and expressive activity that businesses like Adult Books purvey permits legislative bodies to put adult entertainment establishments in a different category than other entertainment establishments." 10 F.3d at 132. We also stated that the state "need only show that adult

entertainment establishments as a class cause the unwanted secondary effects the statute regulates." Id. at 138; see also Renton, 475 U.S. at 49 (" `[G]overnment can tailor its reaction to different types of speech according to the degree to which its special and overriding interests are implicated.' " (quoting Young v. American Mini Theatres, 427 U.S. 50, 82 n.6 (1976) (Powell, J., concurring))).

We thus conclude that Vineland produced the required showing of the content neutrality of its closing hours ordinance and the substantiality of its interest in ameliorating the secondary effects of late-night litter and parking related to adult book stores.

To sustain the validity of the ordinance against First Amendment challenge, we must also decide if the proffered regulation is narrowly tailored. The government bears the burden of showing that the remedy it has adopted does not "burden substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799. Vineland points out that its ordinance is no more restrictive than the Delaware hours restriction upheld by this court in Mitchell and, in fact, allows businesses to open two hours earlier. Moreover, under the fairly lenient standard for time, place, manner restrictions, "[t]he city

14

must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." Renton, 475 U.S. at 52 (internal quotations omitted).

Finally, with respect to the requirement that the ordinance leave open adequate alternative channels of communication, we need only look to our dismissal in Mitchell of the argument that an hours restriction fails this test "because it prohibits adult entertainment during the time of greatest customer demand" (late at night). As we stated in that case, "the [statute] allows those who choose to hear, view, or participate publicly in sexually explicit expressive activity more than thirty-six hundred hours per year to do so. We think the Constitution requires no more." See Mitchell, 10 F.3d at 139.

We assume that underlying its preliminary injunction was the district court's conclusion that Ben Rich had shown a probability of success on the merits. We conclude, to the contrary, that based on the evidence, Ordinance 95-55 is a permissible time, place, manner restriction. It follows that we need not reach the other factors to be considered in preliminary injunction review, as this preliminary injunction cannot stand.

B.

CONVERSATION BOOTHS ORDINANCE

The language of subsection (1) of Vineland Ordinance 95-56, which is a land use ordinance, prohibits any uses in adult bookstores except the "sale or rental of books, videos, and novelties, and on-site rental for viewing of videos and movies." App. at 44. On its face, this appears to effect a complete prohibition of all live dancing, nude or otherwise, in adult bookstores, and as such would be of questionable validity under Schad v. Borough of Mt. Ephraim, 452 U.S. 61 (1981). Although the court's Order to Show Cause required the City to show cause why the court "should not issue a preliminary injunction enjoining [the] defendants from enforcing City of Vineland ordinances 95-55 and 95-56," app. at 53, and presumably therefore the entire ordinance was at issue, the preliminary injunction itself

15

only enjoins the City from enforcing 95-56 "to the extent that it contains a complete prohibition on live entertainment through the use of individual or `conversational booths,' " app. at 210 (emphasis added). This is the subject of subsection (2), which was particularly referenced in the Order to Show Cause. Therefore, on this appeal from that preliminary injunction, we need not consider the reach of subsection (1) because its validity was not decided by the district court. We limit our consideration to the issue that most interests the parties - the injunction as to the conversation booths regulation.

Vineland argues that the district court entered its November 2, 1995 order preliminarily enjoining enforcement of Ordinance 95-56, "to the extent that it contains a complete prohibition on live entertainment through the use of individual or conversation booths," app. at 210, under the incorrect belief that subsection (2) of the Ordinance effected a complete prohibition on the offering of live entertainment in conversation booths.

Vineland has presented a persuasive case that there is a substantial governmental interest in preventing anonymous sex in conversation booths and in controlling the spread of sexually transmitted diseases. Vineland presented evidence to the district court, taken from the legislative history of the New Jersey statute, that in booths in adult bookstores, patrons have unprotected sex with anonymous partners either in the same booth or through an opening to an adjacent booth, or masturbate, and that such conduct

promotes the spread of AIDS. See, e.g. , app. at 80-100 (Testimony of Debbie Crook). Vineland also presented legislative history from the Delaware statute regarding similar secondary effects of adult booths, which the court in Mitchell found sufficient to withstand First Amendment objections. See app. at 101-08.

The substantial interest in controlling anonymous sex in adult entertainment establishments is adequately documented by Vineland. See Chez Sez VIII v. Poritz, No. 95-3349 (N.J. Super. Ct., Law Div. Aug. 31, 1995) ("[h]alting the spread of [AIDS] and other communicable diseases by reducing the incidence of promiscuous, unprotected sex undoubtedly constitutes a compelling state

16

interest"), rev'd on other grounds, 688 A.2d 119 (N.J. App. Div. 1997).

This does not mean that a complete ban on live entertainment in conversation booths in adult bookstores would meet the requirement of being narrowly tailored to achieve this end. In Mitchell, we distinguished the Delaware statute that required that booths in adult bookstores be open on at least one side, which we upheld, from one that imposed a total ban on such booths, noting: "Delaware's open-booth amendment does not ban films or other entertainment. . . . It is not directed at limiting the content of films or performances patrons can view from within the booths, but rather at curbing the undesirable incidental effects that are perceived to result from the use of closed booths in adult entertainment establishments." 10 F.3d at 140. Indeed, virtually all ordinances that courts have upheld which have sought to reduce the effects of anonymous sex in adult entertainment establishments have imposed an "open booth" requirement. See Mitchell, 10 F.3d at 128 (open on one side to a public room); Bamon Corp. v. City of Dayton, 923 F.2d 470 (6th Cir. 1991) (removal of doors); Doe v. City of Minneapolis, 898 F.2d 612, 620 (8th Cir. 1990) (open on one side); Berg v. Health and Hospital Corp., 865 F.2d 797, 803 (7th Cir. 1989) (open on one side to a public room; "does not bar people from watching films or entertainment in individual enclosures"); Wall Distributors, Inc. v. City of Newport News, 782 F.2d 1165, 1167 (4th Cir. 1986) (visible from continuous aisle).

Subsection (2) of Ordinance 95-56 only prohibits the use of conversation booths if they allow for privacy between dancer and patron or if the booths would "facilitate sexual activity." We construe that conditional restriction as tantamount to an "open booth" requirement since an owner

can satisfy the non-private condition by leaving at least one
side of the booth open to the public area. See Mitchell, 10
F.3d at 139-40 (Delaware statute requires such booths to
have "at least one side open to an adjacent public room so
that the area inside is visible to persons in adjacent public
rooms").

This is the construction given by the New Jersey
Appellate Division in upholding the New Jersey statute that

prohibits conversation booths that "facilitate sexual
activity," notwithstanding its failure to explicitly require
open booths. See Chez Vez VIII, Inc. v. Poritz, 688 A.2d 119,
122 (N.J. Super. 1997). The court concluded that if a booth
is visible to a public room it would not be conducive to
sexual activity, and thus the "statute embraces all the
physical requirements of other jurisdictions [that impose
open booth requirements]." Id. at 128. Inasmuch as
Vineland's Ordinance 95-56 contains language similar to
that in the New Jersey statute, it is reasonable for us to
construe it in the same way as imposing an open booth
requirement.

Following the district court's December 1, 1995 order
inviting the City to enact additional regulations to control
secondary effects within constitutional constraints, on April
23, 1996, Vineland passed Ordinance 96-32 entitled,"An
Ordinance of the City of Vineland Relating to Sexually
Contagious Diseases." See Ben Rich Trading, Inc. v. City of
Vineland, No. 96-cv-2496, slip op. at 3 (D.N.J. Jan. 10,
1997). The Ordinance imposes a more explicit open booth
requirement by mandating that booths in adult theaters
have " `at least one side open to an adjacent public room so
that the area inside is visible to persons in the adjacent
public room.' "1 Id. at 3-4 (quoting City of Vineland

_____

1. It provides in pertinent part:

        No person shall own, operate, manage, rent, lease or exercise
control
        of any commercial building, structure, premises or portion or
part
        thereof, which contains:

        (1) Partition between subdivisions of a room, portion or part of
a
        building, structure or premises having an aperture which is
        designed or constructed to facilitate sexual activity between
persons

on either side of the petition (sic).

    (2) Booths, stalls, or partitioned portions of a room, or individual
    rooms, used for the viewing of motion pictures or other forms of
    entertainment, having doors, curtains or portal partitions, unless
    such booths, stalls, partitioned portions of a room, or individual
    rooms so used shall have at least one side open to an adjacent
    public room so that the area inside is visible to persons in the
    adjacent public room.

Ben Rich, No. 96-cv-2496, at 3-4 (quoting City of Vineland Ordinance 96-32).

Ordinance 96-32). The district court considering that Ordinance upheld it against a constitutional challenge by Ben Rich, after concluding that the City adequately documented, prior to its enactment, the desired goal of preventing anonymous sex in adult theaters and the corresponding spread of sexually transmitted diseases. See id. at 13.

Ben Rich did not appeal that judgment and, indeed, argues that the new ordinance is substantially more reasonable and narrowly tailored than Ordinance 95-56. However, Ordinance 96-32 is not materially different in substance than subsection (2) of Ordinance 95-56 as we have construed it and the parties, therefore, do not appear to differ on their understanding of the permissible scope of Vineland's regulatory authority. In any event, we conclude that the district court erred in holding subsection (2) of Ordinance 95-56 to infringe on Ben Rich's First Amendment rights and in granting a preliminary injunction enjoining its operation.2

IV.

For the reasons stated above, we will reverse the preliminary injunction order entered November 5, 1995 and the orders of December 1, 1995.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit
_____

2. In light of our holding, we need not reach Vineland's argument that the district court should not have issued the December 1, 1995 order permitting Ben Rich to proceed with the offering of conversation booths without requiring Ben Rich to return to the Zoning Board for a decision as to whether conversation booths are a permitted use as an Indoor Theatre. Should the issue arise when this case returns to the district court, we note that the district court should give proper consideration to Vineland's interest in having its administrative procedures exhausted through appeal to the Zoning Board or a request for a variance.

19