**Molly ROTTMANN, Plaintiff,**

v.

**PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., Defendant.**

**Civil Action No. 04–1563.**

United States District Court, W.D. Pennsylvania.

Dec. 23, 2004.

Samuel J. Reich, Jay K. Reisinger, Reich, Alexander & Reisinger, Adrian N. Roe, Watkins, Dulac & Roe, Pittsburgh, PA, for Plaintiff.

Alan R. Boynton, Jr., McNees, Wallace & Nurick, Harrisburg, PA, for Defendant.

*MEMORANDUM*

LANCASTER, District Judge.

This is an action in civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Plaintiff is the head varsity girls' basketball coach at North Catholic High School. The Pennsylvania Interscholastic Athletic Association (the "PIAA") suspended plaintiff for one year for violating its Anti–Recruiting Rule. Plaintiff claims that the Rule, which proscribes the recruiting of grade school and high school students for athletic purposes, violates, among other things, her right to freedom of speech.

Plaintiff has filed a motion for a preliminary injunction on the ground that the PIAA's Anti–Recruiting Rule is facially unconstitutional under the First Amendment because it is a content-based ban on protected speech and is vague and overbroad. She seeks orders lifting her suspension and declaring the Anti–Recruiting Rule unconstitutional. For the reasons set forth below, the motion will be DENIED.

## I. BACKGROUND

### A. The PIAA and its Anti–Recruiting Rule

For the most part the facts of the case are not in dispute. However, where necessary, we have found the appropriate facts after judging the credibility of the witnesses who testified at the preliminary injunction hearing. In doing so, we have employed the traditional methods of assessing the credibility of witnesses: by considering his or her intelligence, motive, bias, state of mind, and demeanor while on the stand.

The PIAA is a Pennsylvania non-profit corporation. Approximately 1,400 public and private high schools in Pennsylvania have voluntarily joined the PIAA. The PIAA develops and enforces rules regulating interscholastic athletic competition among its member schools. Allegheny County school districts[1] are part of Dis-

---

1. City of Pittsburgh schools, although located in Allegheny County, are not part of the WPI-AL.

trict VII of the PIAA, also known as the Western Pennsylvania Interscholastic Athletic League, or the "WPIAL." The parties do not dispute that the PIAA is a state actor for section 1983 purposes. *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 531 U.S. 288, 298–305, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001); *National Collegiate Athletic Association v. Tarkanian,* 488 U.S. 179, 193 n. 13, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988).

Upon applying for membership in the PIAA, member schools agree to conduct their interscholastic athletic programs in accordance with the PIAA By–Laws and Board of Directors decisions. One such By–Law is the Anti–Recruiting Rule. The Anti–Recruiting Rule, found in Article VI of the PIAA By–Laws, forbids recruiting of students for the purpose, "in whole, or in part," of participating in athletics at a school.

The Anti–Recruiting Rule subjects schools, and their coaches, to sanctions:

> [i]f the District Committee finds that the school, a representative of the school's athletic personnel, or any other person affiliated with the school, approached a student, or a parent or guardian of that student, or an adult with whom that student resides, and attempted to influence and/or influenced that student to transfer to that school, either in whole or in part, for any athletic purpose, or otherwise engaged in recruiting students, either in whole or in part, for an athletic purpose . . .

PIAA Constitution and By–Laws, Article VI, Section 10(C). In addition to the penalties that the PIAA may impose for any violation of its By–Laws, which range from public censure to forfeiture of championship rights to expulsion, the Anti–Recruit-ing Rule requires any coach found to have engaged in recruiting to be disqualified from coaching any PIAA member teams for a period of at least one year.

The PIAA has amended its Anti–Recruiting Rule several times in recent years. It amended the Rule in May of 2001 after the Pennsylvania General Assembly directed the PIAA to make the Rule more stringent. Under the 2001 amendment, a school found to have recruited students was given the option of either suspending the coach involved in the activity or suffering other sanctions. The PIAA again amended the Rule in December of 2002 to require disqualification, directly by the PIAA, of any coach determined to have engaged in recruiting. In May of 2003, the PIAA added explanatory language regarding the purposes of the Rule and illustrations of activities that would violate the Rule. The main difference between the Anti–Recruiting Rule that existed in December 2002 and the one that exists now is that the current rule explains the purposes of the Rule and includes illustrations of the type of conduct that violates the Rule. The general substance of the Rule has not significantly changed as a result of the recent amendments.

**B.**  *Plaintiff's Recruiting and Suspension*

In March of 2004, the WPIAL Committee directed North Catholic to investigate information it had received that plaintiff may have engaged in recruiting. Plaintiff was accused of recruiting April Austin, then an eighth-grade student and standout basketball player at St. Bartholomew's grade school.[2] North Catholic reported back to the Committee, which held a hear-

---

**2.** Ms. Austin is now enrolled at North Catholic High School, where she plays varsity bas-ketball.

ing on the matter on June 29, 2004. The WPIAL Committee determined that plaintiff had engaged in "... recruiting April Austin for an athletic purpose while April was in eighth grade at St. Bartholomew's Grade School ..." during the 2002–2003 season.[3] July 1, 2004 letter from L. Hanley to E. Scheid. The WPIAL Committee suspended plaintiff for one year for her post-December 2002 conduct. For her pre-December 2002 conduct, North Catholic was directed to either suspend plaintiff for that same year or be suspended from participation in the PIAA. North Catholic was also publicly censured. *Id.*

Plaintiff appealed the WPIAL Committee decision to the PIAA Board of Appeal, which held a hearing on July 22, 2004. At the hearing, plaintiff was represented by counsel, presented witnesses and documents, and testified on her own behalf. After the hearing, the Board affirmed the WPIAL Committee's decision. The Board additionally made the following pertinent findings:

12. During the 2003–2003 girls' basketball season, Coach Rottmann attended approximately four to six of April's games at St. Bartholomew.

13. After each contest she attended, Coach Rottmann approached various members of both teams, usually at courtside or in locker rooms, to offer congratulations or to extend a greeting. April Austin was consistently among the players so congratulated or so greeted.

14. Coach Rottmann's interpretation of her behavior is that she was not alone in her course of conduct, and that she either inferred an obligation from the North Catholic administration or instituted her own requirement to "make a presence" at these contests.

.        .        .        .        .

21. Coach Rottmann spoke to eighth-grade girls' basketball players as a representative of the North Catholic girls' basketball program.

22. Coach Rottmann's purpose in speaking to eighth-grade girls' basketball players was to introduce herself to them as the head coach of North Catholic's varsity girls' basketball team.

23. The evidence presented to the Board of Appeal demonstrated that Coach Rottmann's course of conduct was intended to influence eighth-grade girls' basketball players, including April Austin, to attend North Catholic and to play girls' basketball for Coach Rottmann.

24. Coach Rottmann's conduct was clearly intended to recruit girls' basketball players to attend North Catholic, was conducted in an interscholastic girls' basketball setting, was directed at girls' basketball players, and was further intended to recruit, either in whole or in part, for the girls' basketball program at North Catholic.

25. Coach Rottmann's consistent course of conduct toward April Austin and her family during the 2002–2003 girls' basketball season, while not heavy-handed and while not including any commitments or offers, was nonetheless intended to influence April that North Catholic was where she should attend and participate in interscholastic girls' basketball upon promotion from the eighth-grade.

August 3, 2004 letter from PIAA Board of Appeal to E. Scheid.

The Board of Appeal affirmed the WPIAL Committee's one year suspension of plaintiff. That suspension began on June 29, 2004 and will end on June 28, 2005. For the recruiting conduct that occurred prior to the December 2002 amendments,

---

**3.** Girls' basketball seasons generally run from November to March.

the Board of Appeal modified the punishment levied on North Catholic and directed North Catholic to either suspend plaintiff or forfeit championship rights for two years, rather than be suspended from the PIAA entirely.

Plaintiff filed this suit on October 12, 2004, and sought a temporary restraining order[4] and preliminary injunction two weeks later. Plaintiff now seeks a preliminary injunction: (1) lifting her one year suspension because the December 2002 version of the Recruiting Rule under which she was punished was unconstitutional; and (2) declaring the current Recruiting Rule unconstitutional.

## II. *STANDARD OF REVIEW*

■ A preliminary injunction is not a matter of right, but rather is committed to the sound discretion of the court. *Spartacus, Inc. v. Borough of McKees Rocks,* 694 F.2d 947, 949 (3d Cir.1982). It may be granted, however, if the moving party demonstrates both a reasonable probability of eventual success in the litigation, and that it "will be irreparably injured *pendente lite* if relief is not granted." *Polaroid Corp. v. Disney,* 862 F.2d 987, 991 (3d Cir.1988). The trial court should also consider, when relevant, the possibility of harm to other interested persons from the grant or denial of the injunction, as well as harm, if any, to the public interest. *Id.*

■ Additionally, a preliminary injunction can be entered or denied without a hearing when there are no relevant facts in dispute. *Williams v. Curtiss–Wright Corp.,* 681 F.2d 161, 163 (3d Cir.1982); *see also Bradley v. Pittsburgh Board of Educ.,* 910 F.2d 1172, 1175–76 (3d Cir.1990). Similarly, "[a] district court is not obliged to hold a hearing when the movant has not presented a colorable factual basis to sup-

port the claim on the merits or the contention of irreparable harm." *Bradley,* 910 F.2d at 1176.

## III. *DISCUSSION*

Plaintiff seeks two forms of preliminary injunctive relief: (1) an order vacating her one year suspension under the December 2002 Anti–Recruiting Rule; and (2) an order prospectively enjoining enforcement of the current version of the Anti–Recruiting Rule. Plaintiff claims that the Anti–Recruiting Rule is a content-based ban on protected speech that cannot survive under the strict scrutiny test. Plaintiff also contends that the Anti–Recruiting Rule is unconstitutional because it is vague and overbroad.

We find that plaintiff has not shown a likelihood that she will succeed on the merits of either of her constitutional challenges to the Rule. Without such a showing, the motion must be denied. *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 484 (3d Cir.2000).

### A. *The Constitutional Tests—Burdens on Speech*

The Supreme Court has developed various tests to be used in assessing the constitutionality of regulations that place burdens on speech. Therefore, the first question to be decided is which analytical test to apply here.

■ When a regulation is aimed at suppressing the content of protected speech, the strict scrutiny test applies. *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). Under the strict scrutiny test, a restriction must serve a compelling state interest and be narrowly tailored to achieve that interest by the least restric-

---

**4.** Plaintiff's motion for a temporary restraining order has previously been rendered moot.

tive means possible. *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 231, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987).

■ Where a regulation does not seek to regulate the content of speech itself, but instead seeks to curb the undesirable secondary effects of speech by proscribing the time, place, and manner of it, the intermediate scrutiny test applies. *Ben Rich Trading v. City of Vineland,* 126 F.3d 155, 160 (3d. Cir.1997). Under the intermediate scrutiny test, a regulation is valid if it is content neutral, is narrowly tailored to serve a substantial interest, and leaves alternative avenues of speech open to the speaker. *Turner Broadcasting,* 512 U.S. at 642, 114 S.Ct. 2445; *Ben Rich,* 126 F.3d at 163.

■ Where a regulation places a burden on a public employee's speech, the courts apply the *Pickering-Connick* test to assess the constitutionality of the regulation. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Under the *Pickering-Connick* test, a court must first determine whether the speech affected by the challenged regulation involves a matter of public concern. If so, the court must then balance the speaker's interest in engaging in the speech against the state's interest in promoting the purposes behind the restriction in determining whether the regulation is constitutional. *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731; *Connick,* 461 U.S. at 147, 103 S.Ct. 1684; *Versarge v. Township of Clinton,* 984 F.2d 1359, 1363–68 (3d Cir.1993).

■ Whether speech addresses a matter of public concern must be determined by the content, form, and context of a given statement. *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. A court must consider whether the statement relates to any matter of political, social, or other concern to the community, keeping in mind that having free and unhindered debate on matters of public importance is at the core of values protected by the Free Speech Clause of the First Amendment. *Id.* The determination as to whether speech addresses a matter of public, or private, concern is a question of law. *Id.* at 157, 103 S.Ct. 1684 n. 1.

If the disputed speech is not on a matter of public concern, but rather addresses a private matter only, it enjoys no constitutional protection under the *Pickering-Connick* test and the analysis is over. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684; *Versarge,* 984 F.2d at 1364. The Supreme Court has found that where speech cannot be fairly considered as relating to any matter of political, social, or other concern to the community, the government should enjoy wide latitude in providing services to the public, through its employees, and others, without intrusive oversight by the judiciary in the name of the First Amendment. *Connick,* 461 U.S. at 146, 103 S.Ct. 1684.

### 1. *Application of the Pickering–Connick Test*

Plaintiff contends that the Anti–Recruiting Rule is subject to strict scrutiny because it is a "complete ban on coach/prospective student speech." Plaintiff argues that the Rule cannot survive a strict scrutiny level of constitutional analysis because it could be more narrowly drawn to allow recruiting if the student initiated the contact, or to provide for written disclosure of a school's recruiting interest in a student prior to contact. We disagree and, as stated later herein, find that the Anti–Recruiting Rule does not place a total ban on speech between coaches and "prospective students." Rather, we find that the

*Pickering-Connick* test is applicable in this case.

■■■ Although the *Pickering-Connick* test originally applied only to speech by public employees, courts have extended it to situations, like this one, where the government is not necessarily the employer, but exercises contractual power, rather than sovereign power, over the individual and has an interest in providing services to the public. *See Board of Commissioners v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *O'Hare Truck Service, Inc. v. City of Northlake,* 518 U.S. 712, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996), *Kinney v. Weaver,* 367 F.3d 337, 358–67 (5th Cir.2004); *Smith v. Cleburne County Hospital,* 870 F.2d 1375 (8th Cir. 1989). The PIAA exercises no sovereign power over North Catholic or plaintiff; North Catholic and the PIAA have a contractual relationship. North Catholic and plaintiff are only bound by the Anti–Recruiting Rule because North Catholic voluntarily applied for membership in the PIAA. North Catholic can free itself from the proscriptions of the Anti–Recruiting Rule at any time by withdrawing from membership.

Furthermore, the court finds that the PIAA has an employer-like interest in North Catholic that is at the core of the rationale for the *Pickering-Connick* test. Were North Catholic, or any of its employees, to engage in inappropriate activity, such as repeated unsportsmanlike conduct, or cheating, or recruiting, the PIAA needs to be free to sanction the wrongdoer in order to maintain the quality of its programs and to serve the purposes for which it was created. The Anti–Recruiting Rule itself directly promotes the quality of the services that the PIAA provides to the public by ensuring that academics are not usurped by athletics and that students are not pressured into attending schools to play sports.

On the spectrum of the government's relationship with third parties, the relationship between North Catholic, and by extension plaintiff, and the PIAA is more analogous to the government's relationship with its employees than to the government's relationship with its general citizenry. As a result, we find that the *Pickering-Connick* test is appropriate in this case.

■■■ Under the *Pickering-Connick* test, we must first determine whether plaintiff's speech addressed a matter of public concern. Here the restriction on speech is a prohibition on high school coaches recruiting students to enroll in a particular school, in whole or in part, to play sports for that school. Plaintiff's efforts to influence Ms. Austin to attend North Catholic High School, in whole or in part, to play basketball for her at North Catholic is not speech on a matter of public concern. In fact, by definition, the concern was private and personal in nature: encouraging Ms. Austin to attend North Catholic instead of some other school, so that she could play on plaintiff's team, rather than someone else's team.

Which high school a teenager plays basketball for does not relate to any matter of political, social, or other concern to the community. In content, form, and context, plaintiff's recruiting of this girl for her basketball program by extolling the advantages of North Catholic High School does not qualify as speech addressing a matter of public concern.

Nor are we persuaded by plaintiff's testimony that she was not seeking to recruit Ms. Austin to attend North Catholic, in whole or in part, for athletic purposes, but was simply encouraging her and other girls to continue playing sports and to continue a Catholic school education.

First, we did not find her testimony in this regard credible. Nor do we find credible her testimony that she did not realize that her conduct was prohibited recruiting.

Second, and of equal importance, her testimony is contrary to the findings of the PIAA. At the hearing before the PIAA, plaintiff was represented by counsel, presented evidence on her behalf, and cross examined the witness against her. The PIAA, after considering the evidence, made findings that were supported by the record. We will not reweigh the evidence, reevaluate the credibility of the witness, or otherwise provide plaintiff a *de novo* review on the merits of whether she, in fact, engaged in recruiting activity as found by the PIAA.

Moreover, she does not contend, and there is nothing in the record or the pleadings to establish, that the PIAA finding was fraudulent, arbitrary, capricious, or a result of discriminatory animus. Therefore, we will not interfere with the PIAA determination. *See Harrisburg School District v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 502–03, 309 A.2d 353 (1973).

█ Finally, we note parenthetically that if it were determined that plaintiff's recruiting activities addressed a matter of public interest and we were to engage in the next step of analysis, the Anti–Recruiting Rule at issue would easily pass constitutional muster. The Rule's purpose in promoting academics over athletics, protecting students from exploitation, and maintaining competitive equity greatly outweigh any public interest in allowing plaintiff to recruit standout eighth grade athletes to play girls' basketball at North Catholic High School.

2. *Application of the Intermediate Scrutiny Test*

Again, we hold that the *Pickering-Connick* test applies to the case. We recognize, however, that reasonable minds could differ on the issue and therefore we now address the intermediate scrutiny test.

█ The Anti–Recruiting Rule passes constitutional muster under the intermediate scrutiny test. We find from the credible evidence that it serves the substantial government interests of prioritizing academics over athletics, protecting young student athletes from exploitation, and ensuring an even playing field among competing schools. The Rule is narrowly drawn to serve those interests: it proscribes only recruiting of students, in whole or in part, for athletic purposes.

█ Finally, the Rule allows alternative avenues of communication regarding the North Catholic athletic programs. The Rule does not prevent plaintiff from talking about her basketball program, rather it proscribes the manner and circumstances in which she may do so. The court found Mr. Cashman, the Executive Director of the PIAA, to be a credible witness and finds that the Rule does not prohibit plaintiff from speaking about her basketball program at open houses at the school and answering questions regarding the basketball program there; the Rule does not preclude North Catholic from putting information about the basketball program on the school's website along with information about all of its activities and programs; the Rule does not prohibit placing information about the basketball program in written literature about the school or discussing it at a general assembly of eighth graders; the Rule does not prohibit coaches from holding skills clinics and speaking at school dinners. Indeed, the record reflects that North Catholic and plaintiff have engaged in all of these exact informational activities without sanction from the PIAA.

What the Rule forbids, among other things, is plaintiff's repeated approaching of Ms. Austin, as a representative of North Catholic High School's basketball team, after her stellar on-court performances at St. Bartholomew's grade school, to talk with her about basketball and North Catholic. Plainly, the Rule is not a content ban on speech regarding a school's basketball program. Instead, the Rule seeks to curb the secondary effects of speech directed at students, and their parents, regarding athletic programs by proscribing the time, place, and manner of such speech and does so in a constitutionally permissible way.

### B. *Vague and Overbroad*

#### 1. *Vagueness*

■ A regulation is unconstitutionally vague when it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application. *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 497–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Rode v. Dellarciprete*, 845 F.2d 1195, 1199 (3d Cir.1988). In addition, a regulation may be vague where it impermissibly delegates broad discretion to decision makers to apply the rule in an arbitrary and discriminatory manner. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ A plaintiff has standing to challenge a regulation on the basis of vagueness only if it is vague as applied to that person. The Court of Appeals for the Third Circuit has found that when a litigant's conduct clearly falls within the permissible purview of a regulation, such an individual lacks standing to challenge the regulation on the grounds of vagueness.

*Aiello v. City of Wilmington*, 623 F.2d 845, 850 (3d Cir.1980).

■ Plaintiff cannot succeed in her facial challenge to the Anti–Recruiting Rule on the ground that it is vague because she does not have standing to assert such a challenge. Plaintiff's conduct clearly falls within the reasonable purview of the Rule. As the PIAA Board of Appeals found, plaintiff, as a representative of North Catholic High School, repeatedly approached April Austin at her basketball games. Further, her contacts were intended to influence her to attend North Catholic. There is no real question that repeatedly approaching a standout student athlete and attempting to influence her enrollment decision constitutes recruiting. As such, plaintiff does not have standing to mount a facial attack to the Rule on the grounds of vagueness.

■ Apart from this defect in standing, there is no need to guess at to the Rule's meaning and there is no undue discretion delegated to the enforcement bodies. The terms "recruiting", "athletic purpose" and "encourage" are not esoteric terms. They each have plain and common meanings. They are neither vague nor ambiguous. The Rule as a whole and the words used within are clear and definitively reflect the PIAA's intent that school personnel are not to influence, to any degree, a student's decision to attend a certain school based on athletics. There is no real confusion over the meaning of these words and the proscriptions of the Rule.

Furthermore, there is no undue discretion delegated to the decision makers under the Rule. Although plaintiff may not agree with the result, there is no real dispute that the WPIAL Committee and the PIAA Board of Appeals applied the proscriptions of the Anti–Recruiting Rule to plaintiff's conduct in an objective way to

arrive at a determination that, under all the circumstances, she recruited Ms. Austin. The PIAA's findings are very clear in reciting what it was about plaintiff's conduct that they found to be in violation of the Rule. The Rule gives no more discretionary power to the PIAA than any regulation gives to the body charged with applying it to a specific set of facts.

We find that plaintiff has not shown a reasonable likelihood that she will succeed in proving that the Anti–Recruiting Rule are unconstitutionally vague.

### 2. *Overbreadth*

■ A regulation is overbroad if it punishes a substantial amount of protected speech, when judged in relation to the regulation's legitimate sweep. *Virginia v. Hicks,* 539 U.S. 113, 118–19, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003). The overbreadth doctrine was established out of concern that the threat of enforcement of an overly broad regulation may deter or chill constitutionally protected speech, especially when the regulation imposes criminal sanctions. *Id.* at 119, 123 S.Ct. 2191 (citations omitted). The Supreme Court has repeatedly cautioned, however, against striking down a statute on its face due to overbreadth where there are a substantial number of situations to which it might be validly applied. *Parker v. Levy,* 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (citing *United States Civil Service Comm'n v. National Association of Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)); *see also Brentwood Academy v. TSSAA,* 262 F.3d 543, 556–57 (6th Cir.2001).

■ Plaintiff cannot succeed in her facial challenge to the Anti–Recruiting Rule on the ground that it is overbroad. There are a substantial number of ways that the Rule can be validly applied. For instance, it prevents schools from providing financial incentives or promising positions to students who agree to attend a school. Therefore, under Supreme Court precedent, there is a reluctance to strike down the Rule on this basis.

Apart from this reluctance, we find that this is not a case in which to uphold such a constitutional challenge. The Rule does not punish a substantial amount of protected speech, when judged in relation to its legitimate sweep. The Rule punishes that speech, and conduct, that is aimed at influencing a student to attend a school for athletics. Substantial government interests are advanced by forbidding such activity.

Nor are we persuaded by plaintiff's claim that she is now afraid to talk with students, at all, about attending North Catholic High School for fear that she will be sanctioned for violations of the PIAA's Anti–Recruiting Rule. Plaintiff cannot make the Rule constitutionally overbroad by giving it an unreasonably overbroad reading. There is no legal or factual basis for a finding that the Rule is overbroad.

## IV. *CONCLUSION*

As a general rule nationwide, courts will not interfere with the internal affairs of state scholastic athletic associations. In the absence of mistake, fraud, collusion or arbitrariness, the decisions of such associations will be accepted by the courts as conclusive. *See Harrisburg School District v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 502–03, 309 A.2d 353 (1973). Such associations may adopt reasonable rules which will be deemed valid and binding upon the members of the association unless the rule violates some law or public policy. It is not the responsibility of the federal courts to inquire into the expediency, practicability, or wisdom of those regulations.

We find that the Anti–Recruiting Rule is not unconstitutional. As such, it is not the place of this court to engage in any further inquiry into the facts and circumstances of plaintiff's case.

Therefore, it is this 23rd day of December, 2004, HEREBY ORDERED that plaintiff's motion for preliminary injunction is DENIED.