**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1846
_____

TERRY SUTTON, d/b/a Cinkaj Brogue Limited Partnership; BRENDA SUTTON, d/b/a
Cinkaj Brogue Limited Partnership; CHRIS CINKAJ, d/b/a Cinkaj Brogue Limited
Partnership

v.

CHANCEFORD TOWNSHIP; TIMOTHY J. BUPP, Solicitor,
Chanceford Township in his individual and official capacities;
JOHN SHANBARGER, JR., Chair, Chanceford Township
Planning Commission, in his individual and official capacities;
BRUCE MILLER, Vice Chair, Chanceford Township Planning
Commission, in his individual and official capacities;
MARK A. BUPP, Vice Chair, Chanceford Township Planning Commission,
in his individual and official capacities; RALPH DAUGHERTY,
Member, Chanceford Township Planning Commission,
in his individual and official capacities; THOMAS GIZZI, SR.,
Member, Chanceford Township Planning Commission,
in his individual and official capacities; ROBERT LYTER, Member,
Chanceford Township Planning Commission,
in his individual and official capacities; BRENDA GOHN,
Secretary, Chanceford Township Planning Commission,
in her individual and official capacities; BRADLEY K. SMITH, Chair,
Chanceford Township Board of Supervisors, in his individual
and official capacities; KENT E. HEFFNER, Vice Chair,
Chanceford Township Board of Supervisors, in his individual and
official capacities; CLIFTON M. BALDWIN, Member, Chanceford Township
Board of Supervisors, in his individual and official capacities;
DAVID HOPKINS, Chair, Zoning Hearing Board Chanceford Township, PA,
in his individual and official capacities; MARK FREY, Member,
Zoning Hearing Board Chanceford Township, PA, in his individual
and official capacities; DAVID J. HIVELY, Member, Zoning Hearing Board
Chanceford Township, PA, in his individual and official capacities;
JEFFREY L. KOONS, Zoning Officer, Chanceford Township, PA,

in his individual and official capacities; GRANT A. ANDERSON,
Township Engineer, in his individual and official capacities

TERRY SUTTON; BRENDA SUTTON; CHRIS CINKAJ,
Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(No. 1-14-cv-01584)
District Judge:  Honorable Martin C. Carlson

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 22, 2019

Before:  CHAGARES and BIBAS, Circuit Judges, and SÁNCHEZ, Chief District
Judge[+].

(Filed  February 13, 2019)

_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

Appellant Terry Sutton[1] sought to operate an adult entertainment club inside a

shopping center he owned in Chanceford Township, Pennsylvania.  But the Township's

Zoning Hearing Board rejected his application for a permit.  So Sutton sued the

---

[+] The Honorable Juan Sánchez, Chief United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Terry Sutton's wife, Brenda, and his business partner, Chris Cinkaj, are also appellants.  Because they all advance the same claims, we refer only to Terry for ease of reference.

Township and many of its officials, arguing, among other things, that the Township's special requirements for adult entertainment facilities violate the First Amendment, both facially and as applied, and that the Board's rejection of his application also violated his right to substantive due process. The District Court granted summary judgment in favor of the Township, and, for the following reasons, we will affirm.

I.

Because we write solely for the parties, we recite only the facts essential to our disposition.

Chanceford Township, like many municipalities, has a zoning ordinance to regulate development. The ordinance divides the Township into five zones, and within each one, some uses are generally permitted, some are prohibited, and others are permitted by "special exception." Joint Appendix ("J.A.") 165–66.[2] A use permitted by special exception requires a permit from the Zoning Hearing Board. Before granting any application for a special exception, the Board must make several findings, including that the applicant has established that the proposed use will comply with certain sewage-disposal and ground-water recharge requirements.

One use permitted in the Township's General Commercial Zone as a special exception is an "adult oriented facility." J.A. 165. As such, it must be approved by the Zoning Hearing Board, no different from any other use permitted by special exception.

---

[2] We note that two consecutive pages in the Joint Appendix are labeled as J.A. 165. When citing this page, we refer to the second page labeled J.A. 165, which contains a table of permitted and special exception uses.

But the ordinance also subjects adult oriented facilities, specifically, to several additional requirements:

- that there be no outward display of any materials or signage related to the adult entertainment offered inside;

- that the facility be windowless or not viewable from the outside;

- that it contain a notice on every entrance explaining that people under eighteen are not permitted and that others may be offended by the entertainment;

- that it have a certain number of parking spaces;

- that it be at least 1,000 feet "from any public or parochial school offering education below the college level, church, library, child day care, or nursery school, including church related nursery school";

- that, if that 1,000-foot distance "cannot practically be achieved," the facility still must be more than 500 feet from such places, and there must be a six-foot tall "security fence" around the facility; and

- that the facility have trees or shrubs around its perimeter "to form an effective visual barrier between [it] and any residence, school, recreation facility, or other non-commercial or non-industrial use."

J.A. 206–07.

In March 2013, Terry Sutton applied for a special exception to use part of his property as an adult cabaret featuring nude female dancers. The Zoning Hearing Board

4

held a hearing and then, in a written decision, denied the application. It first explained that, under the zoning ordinance, a shopping center can consist only of "stores," which the cabaret was not. J.A. 957. The Board further explained that, regardless, the application failed to demonstrate that the proposed use would meet the sewage-disposal and ground-water recharge requirements required for any special exception under the zoning ordinance. And finally, the Board explained that the cabaret, because it would feature nude dancing while also permitting patrons to bring in their own alcohol, would violate state law, which prohibits lewd entertainment in a "bottle club." 18 Pa. Cons. Stat. § 7329. Because the proposed use would be unlawful, the Board found that it would constitute a "nuisance" prohibited under Section 301.1 of the ordinance. J.A. 961.

In response, Sutton filed a complaint against Chanceford Township[3] in federal court, asserting claims under both federal and Pennsylvania law. Most relevant to this appeal, he claimed that the Township's ordinance violated the First Amendment, both facially and as applied, and that the Township, in denying his application, violated his Fourteenth Amendment right to substantive due process. The District Court granted summary judgment in favor of the Township, and Sutton timely appealed.

II.

We have jurisdiction under 28 U.S.C. § 1291, and the District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. Our review of a grant of summary judgment is de novo. Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014).

---

[3] The lawsuit also named various Chanceford officials as defendants.

5

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(a)).

III.

Sutton presents three arguments: that the Township's ordinance's restrictions on adult entertainment facilities facially violate the First Amendment; that those restrictions were unconstitutional as applied here; and that the Board, in rejecting his application, violated his right to substantive due process. None have merit.

A.

We start with the facial challenge. The Supreme Court has held that "zoning ordinances designed to combat the undesirable secondary effects of [adult] businesses are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations." City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 49 (1986). That is, such zoning ordinances are valid when "they are narrowly tailored to serve a significant or substantial government interest" and also "leave open ample alternative channels of communication." Phillips v. Borough of Keyport, 107 F.3d 164, 172 (3d Cir. 1997) (en banc) (quoting Mitchell v. Comm'n on Adult Entm't Establishments, 10 F.3d 123, 130 (3d Cir. 1993)). In applying the "secondary effects" doctrine, we have required municipalities to "identify the justifying secondary effects with some particularity," and "offer some record support for the existence of those effects and for the [o]rdinance's amelioration thereof." Id. at 175. But a municipality need not "conduct new studies or

6

produce evidence independent of that already generated by other cities, so long as whatever evidence [it] relies upon is reasonably believed to be relevant to the problem that [it] addresses." Renton, 475 U.S. at 51–52.

Sutton argues that the Township failed to prove that the purpose of its restrictions on adult entertainment facilities was to combat their secondary effects. But even viewing the record in the light most favorable to Sutton, we conclude otherwise — there is no genuine dispute that the Township acted to address the secondary effects of adult entertainment facilities. To be sure, as Sutton point outs, the evidence of the Township's consideration of secondary effects is thin. But the evidence is there. The Township has produced sworn affidavits from multiple officials involved in passing the adult entertainment restrictions demonstrating that the "principal concerns" were with "orderly growth, traffic, health and safety, and crime." J.A. 156; see also J.A. 516–17; 1210. And the Township has "offer[ed] some record support for the existence of those effects and for the [o]rdinance's amelioration thereof." Phillips, 107 F.3d at 175. The Township's then-Chairman of the Board stated, under penalty of perjury, "that studies had been performed in other municipalities demonstrating a direct relationship between the presence of [adult] facilities and increases of crime and decreases in surrounding property values." J.A. 157. Moreover, the Township's then-Solicitor testified that he reviewed various court decisions, as well as legislative findings, discussing the negative secondary effects of adult entertainment businesses. See J.A. 1051–53; see also 68 Pa. Cons. Stat. § 5501(a)(1) ("There are within this Commonwealth a number of adult-oriented establishments which require special regulation by law and supervision by public safety

7

agencies in order to protect and preserve the health, safety and welfare of patrons of these establishments, as well as the health, safety and welfare of the citizens of this Commonwealth."). And we have held that municipalities are entitled to rely on the legislative findings of their home state. See Ben Rich Trading, Inc. v. City of Vineland, 126 F.3d 155, 160–62 (3d Cir. 1997). Sutton does not contest these findings. In sum, the record demonstrates that the ordinance "was passed to control the socially undesirable effects incidental to the operation of adult entertainment establishments." Mitchell, 10 F.3d at 137.

The ordinance, accordingly, passes constitutional muster so long as it is "narrowly tailored" and "leave[s] open adequate alternative channels of communication." Id. at 139. That is the case here. Indeed, Sutton offers no argument to the contrary beyond claiming that the Township did not identify with enough precision the secondary effects it sought to target. But the Township did identify the concerns underlying its zoning ordinance — "surrounding property values, crime, noise, and harmonious development with other uses." J.A. 157. As the Supreme Court has stressed in this context, a municipality "must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems." Renton, 475 U.S. at 52 (quoting Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 71 (1976) (plurality opinion)). Sutton's facial challenge fails.

B.

Sutton next argues that, even if the ordinance's restrictions on adult entertainment facilities are facially valid, they were unconstitutional as applied. In other words, he contends that the Board denied his application not for content-neutral reasons but

8

specifically "because of its content." Police Dep't of Chi. v. Mosley, 408 U.S. 92, 96 (1972).

This argument fails. The record demonstrates that the Board rejected the application not out of animus to nude dancing but for legitimate, content-neutral reasons. For starters, the Board found that, under the ordinance, only "stores" could be part of a shopping center, and the cabaret was not a store.[4] Perhaps most significantly, the Board found that Sutton failed to establish that the cabaret would meet the ground-water discharge and sewage-disposal requirements applicable to all special uses. Sutton claims that he established compliance with the ground-water discharge requirements by explaining that the shopping center's compliance had been approved when it was originally built and that the cabaret would not require more water than other prior uses there. But Sutton admitted to the Board that he had not "conducted any water supply studies or engineering to indicate the current status of [the shopping center's] water and whether that's going to be changed" with the cabaret. J.A. 937. And Sutton even admitted that he did not "have any studies or testimony to provide to the Board" showing that his proposed use met the ordinance's sewage-disposal requirements. J.A. 938. There is thus no genuine dispute that Sutton failed to meet the ordinance's ground-water discharge and sewage-disposal requirements. That was a legitimate, content-neutral reason for the Board to reject his application.

---

[4] Sutton argues that this misreads the ordinance, pointing out that the shopping center at issue also contains a bank and a church, neither of which seemingly are a "store." But the Board noted that it had "never been asked to decide the appropriateness of any of the uses within the Shopping Center prior to this application." J.A. 959.

9

Finally, the Board found that the cabaret, by featuring lewd activity and permitting patrons to bring in alcohol, would violate Pennsylvania law. Sutton claims that he would have changed the cabaret's alcohol policy if necessary to comply with state law, but, ultimately, the application for the cabaret did include a provision permitting patrons to "bring their own beverages." J.A. 1199. The Board cannot be faulted for evaluating the application on its stated terms.[5]

In short, the Board articulated multiple permissible reasons for denying the application. The record, therefore, does not support Sutton's as-applied challenge.

C.

Lastly, Sutton claims that the Township violated substantive due process when it rejected his application.

We have long explained that "executive action violates substantive due process only when it shocks the conscience." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 399–400 (3d Cir. 2003). While "the meaning of this standard varies depending on the factual context," id., it is "designed to avoid converting federal courts into super zoning tribunals," Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004). Thus, "only the most egregious official conduct" violates substantive due process. Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

---

[5] Sutton also argues that "the content of any adult materials or speech cannot constitute a nuisance," citing Ranck v. Bonal Enters., Inc., 359 A.2d 748 (Pa. 1976). Sutton Br. 31. But the Board did not find the cabaret to be a nuisance because of its obscenity; rather, it found that it would be a nuisance simply because of its illegality. And Sutton does not challenge here the underlying constitutionality of the Pennsylvania statute.

10

Sutton argues that the conduct here meets that standard. He contends that the Township Solicitor, who wrote the final decision denying his application, did so without the approval of the Zoning Board members and purely out of animus toward nude dancing. But Sutton assumes unconstitutional conduct that is unsubstantiated by the record, even when viewed in the light most favorable to him. As discussed, the Board ultimately offered several permissible reasons for denying his application that had nothing to do with the morality or expressive nature of nude dancing. We cannot conclude that such conduct "shocks the conscience." United Artists, 316 F.3d at 400.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.